[Cite as *In re Anderson*, 2013-Ohio-2012.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN THE MATTER OF THE :

GUARDIANSHIP OF : C.A. CASE NO. 25367

LEE ROSE ANDERSON : T.C. NO. 11GRD34

: (Civil appeal from Common
Pleas Court Probate Division)

:

:

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____17th____ day of ____May____, 2013.

. . . . . . . . . .

SUSAN M. BRASIER, Atty. Reg. No. 0039733, 30 Wyoming Street, Dayton, Ohio 45409
    Attorney for Appellants Beverly Rochow and Adam R. Webber

CYNTHIA M. ROSE, Atty. Reg. No. 0084906, P. O. Box 129, Xenia, Ohio 45385
    Attorney for Appellee Joseph Anderson

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Petitioner-appellants Beverly Rochow and Adam R. Webber (hereinafter

collectively referred to as "Appellants"), appeal a decision of the Montgomery County Court

of Common Pleas, Probate Division, overruling their objections and adopting the decision of the magistrate which appointed the guardianship of the person and the estate of Lee Rose Anderson (hereinafter "Lee Rose") to her son, petitioner-appellee, Joseph W. Anderson (hereinafter "Joseph").

{¶ 2} The judgment entry and decision adopting the decision of the magistrate was issued by the trial court on August 15, 2012. On September 10, 2012, the Appellants filed a timely notice of appeal with this Court.

{¶ 3} Lee Rose is a woman in her mid-eighties who has been diagnosed with a high degree of dementia associated with Alzheimer's Disease. Lee Rose has three adult children, Beverly Rochow, Joseph Anderson, and Karen Supper. Lee Rose's husband, Hurstle Anderson, passed away in April, 2009. The record establishes that Lee Rose began experiencing dementia at some point in 2005 or 2006 and is now incompetent. All parties involved agree that Lee Rose is completely dependent on others for her well-being and care.[1]

{¶ 4} On February 24, 2011, Rochow filed an application to be appointed the guardian of Lee Rose's person. On the same day, Webber, an attorney associated with Rochow, filed an application to be appointed guardian of Lee Rose's estate. On March 21, 2011, Joseph and Karen filed an objection to Rochow and Webber's applications for the guardianship of Lee Rose. Joseph filed his own application to be appointed the guardian of

---

[1]The record contains the report of Dr. Jan R. Froelich [no relation to a judge of this court], who evaluated Lee Rose on March 1, 2010, and found her to be incompetent. All of the parties attached the report of Dr. Froelich to their applications for guardianship as evidence of Lee Rose's inability to care for herself or her estate.

Lee Rose's person and estate on April 12, 2011.

{¶ 5} A trial was held before the magistrate on June 27, 2011, in order to determine who would be best suited to manage the guardianship of Lee Rose's person and estate. A supplemental hearing was held before the magistrate on March 26, 2012, during which the parties submitted additional arguments with respect to their respective applications for guardianship.

{¶ 6} On April 25, 2012, the magistrate filed his findings of facts and conclusions of law wherein he appointed Joseph guardian of the person and estate of Lee Rose. The Appellants filed objections to the magistrate's decision on May 11, 2012. Specifically, the Appellants argued that Joseph was unfit to care and provide for the needs of Lee Rose. Additionally, the Appellants assert that Joseph exhibited extremely questionable financial judgment and was, therefore, incapable of managing his mother's estate.

{¶ 7} On August 15, 2012, the trial court issued its decision denying the Appellants' objections and adopting the decision of the magistrate. Essentially, the trial court found that the Appellants had failed to adduce any evidence which affirmatively established that Joseph was unfit to manage the person and estate of Lee Rose. Accordingly, the trial court held that Joseph "[was] a suitable and appropriate person to be appointed guardian" of Lee Rose.

{¶ 8} It is from this judgment that Rochow and Webber now appeal.[2]

{¶ 9} Because all of the Appellants' assignments of error are interrelated, they will be addressed together as follows:

---

[2]We note that Joseph failed to file a responsive brief in the instant appeal.

{¶ 10} "THE LOWER COURT ERRED IN FINDING THAT JOSEPH ANDERSON, AND NOT BEVERLY ROCHOW, WOULD MAKE A SUITABLE GUARDIAN OF THE PERSON."

{¶ 11} "JOSEPH ANDERSON'S SIGNIFICANT FINANCIAL CONFLICTS OF INTEREST AUTOMATICALLY DISQUALIFY HIM AS GUARDIAN, AND HIS APPOINTMENT CONSTITUTES AN ABUSE OF DISCRETION."

{¶ 12} "THE LOWER COURT ERRED IN FINDING THAT ADAM R. WEBBER'S [sic] WAS NOT BETTER QUALIFIED TO SERVE AS GUARDIAN OF LEE ROSE'S ESTATE."

{¶ 13} In their first assignment, the Appellants contend that the trial court erred when it appointed Joseph the guardianship of the person of Lee Rose. Specifically, the Appellants argue that Joseph is not a suitable candidate for the guardianship because he allegedly physically mistreated Lee Rose on at least one occasion, restricts her visitation with Rochow and other relatives, and has allowed his step-daughter, Lacey Antrim, to move into Lee Rose's residence and live with her. The Appellants note that in 2010 Joseph was convicted of disorderly conduct and discharge of a firearm, both charges arising out of the same incident. As a result of these incidents, Joseph was placed under a civil protection order to stay away from his wife. Evidence was adduced that he violated the order twice and was placed on house arrest for fifty-two days. Additionally, the Appellants assert that Joseph threatened to kill Rochow, and that he also threatened to leave Ohio with Lee Rose if Rochow attempted to be made guardian of Lee Rose.

{¶ 14} Pursuant to Civ. R. 53(D)(3)(b), a party who disagrees with a magistrate's proposed decision must file objections to said decision. Claims of trial court error must be

based on the actions taken by the trial court, itself, rather than the magistrate's findings or proposed decision. When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate. *Breece v. Breece*, 2d Dist. Darke No. 99-CA-1491, 1999 WL 999759 (Nov. 5, 1999); *Seagraves v. Seagraves*, 2d Dist. Montgomery Nos. 15047 and 15069, 1995 WL 559970 (Aug. 25, 1995). In accordance with Civ. R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. *Dayton v. Whiting*, 110 Ohio App.3d 115, 118, 673 N.E.2d 671 (2d Dist.1996). Thus, the trial court's standard of review of a magistrate's decision is de novo.

{¶ 15} R.C. 2111.02(A) provides that "[w]hen found necessary, the probate court on its own motion or on application by any interested party shall appoint *** a guardian of the person, the estate, or both, of a minor or incompetent[.]" Regarding the appointment of a guardian, the probate court is required to act in the best interest of the ward. *In re Estate of Bednarczuk*, 80 Ohio App.3d 548, 551, 609 N.E.2d 1310 (12th Dist.1992); R.C. 2111.50(C). The probate court's ruling regarding the appointment of a guardian will not be reversed absent an abuse of discretion if it is supported by competent, credible evidence. *In re Guardianship of Miller*, 187 Ohio App.3d 445, 2010-Ohio-2159, 932 N.E.2d 420 (3d Dist.).

{¶ 16} An "abuse of discretion" standard is the appellate standard of review. When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable. *Proctor v. Proctor*, 48 Ohio App.3d 55, 60-61, 548 N.E.2d 287 (3d Dist. 1988). Presumptions of validity and deference to a trial

court as an independent fact-finder are embodied in the abuse of discretion standard. *Whiting*, supra.

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Citation omitted.) It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 17} Guardianship of the Person of Lee Rose**

**{¶ 18}** Upon review, we find that the trial court did not abuse its discretion when it appointed Joseph the guardian of the person of Lee Rose. Although Joseph testified that he grabbed his mother by the arm on one occasion, the record establishes that this is the only time physical contact like this occurred. Joseph testified that on the occasion in question, Lee Rose was seated in the backyard in a very agitated state. Joseph testified that Lee Rose was "cussing" and "mean." Joseph testified that he said he "got a little ornery with her, too," and grabbed her arm in an attempt to get her up and bring her inside in order to calm

her down. When Joseph tried to pull her up, Lee Rose "brought the chair with her" because, unbeknownst to him, she had grabbed the chair with her other hand. Joseph testified that it was an isolated incident and with the help of Lacey, who has nursing training and was a home health aid in the past, he has learned how to better assist Lee Rose and understand her condition.

{¶ 19} Lee Rose needs around-the-clock attention and care, which Joseph has arranged using a combination of trained caregivers, family help, and community programs. After Hurstle Anderson passed away, Joseph and Karen Supper cleaned and repaired Lee Rose's home in order to make it habitable for her. The repairs took approximately two months, during which time Lee Rose lived with and was cared for by Joseph and his family.

{¶ 20} After the repairs were complete, Joseph arranged for Lacey and her family to move into Lee Rose's residence so that she would have a caregiver on site. In order to spend time with his mother and provide Lacey a brief respite, Joseph testified that he arranged for Lee Rose to spend Wednesdays and weekends at his residence. Joseph also arranged for Lee Rose to attend daycare five days a week so that she has some social interaction with people her own age.

{¶ 21} Rochow testified that Joseph does not allow her to visit Lee Rose unless she is at daycare. Conversely, Joseph, Lacey and Karen testified that Rochow never visits Lee Rose's or Joseph's residence when her mother is home. Moreover, Joseph and Karen testified that Beverly routinely fails to visit Lee Rose and also becomes unavailable for long periods of time when no one is able to reach her. Joseph denied that he ever threatened Rochow, nor did he threaten to leave the state with Lee Rose if Rochow applied for the

guardianship. Other than stating that she would rearrange her work schedule and allow Lee Rose to come live at her residence, Rochow adduced no evidence that she would do a better job than Joseph at providing stable care and assistance for her mother. Although the Appellants place great emphasis on Joseph's legal troubles, we note that all of the activity involves his wife, Susan, not his mother. In our view, the record clearly establishes that he has gone to great lengths to provide for Lee Rose's care and maintenance. Moreover, upon hearing the testimony of the witnesses, it is clear that the magistrate found Joseph to be more credible than Rochow and accordingly gave his testimony more weight. Therefore, we find that the trial court did not abuse its discretion when it adopted the magistrate's recommendation that it was in Lee Rose's best interest to be under the guardianship of Joseph and remain in her current situation.

**{¶ 22}** The Appellants' first assignment is overruled.

**{¶ 23}** **Guardianship of the Estate of Lee Rose**

**{¶ 24}** In their second and third assignments, the Appellants argue that in light of his own personal financial issues and alleged misuse of Lee Rose's funds, the trial court abused its discretion when it adopted the decision of the magistrate appointing Joseph to be the guardian of his mother's estate. The Appellants also assert that the trial court erred by failing to find that Attorney Webber was better qualified to serve as the guardian of Lee Rose's estate.

**{¶ 25}** Initially, we note that a guardian of the estate is responsible for the management of the ward's property. *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 2. The guardian must manage the estate for the best

interests of the ward, pay just debts, defend suits against the ward, and institute suits on behalf of the ward. R.C. 2111.14.

{¶ 26} In the instant case, competent, credible evidence supported the probate court's decision that it was in Lee Rose's best interest to appoint Joseph as guardian of her estate because of his long-time care and support of Lee Rose and because no credible evidence was adduced that Joseph misspent any of her money.

{¶ 27} The Appellants accuse Joseph of misappropriation, self-dealing, and "numerous breaches of fiduciary duty" in regards to expenditures and management of Lee Rose's money. The Appellants point out that financial records establish that Joseph spent approximately $114,000.00 of Lee Rose's money during an eight or nine month period. Moreover, Joseph testified that he used his mother's money to pay off his phone bills and credit cards. Joseph, however, testified that he felt justified in doing so because he uses his phone and credit cards at times to pay for the care and support of Lee Rose. Joseph further testified that he used a substantial portion of Lee Rose's money to maintain and repair her residence, put a new roof on her house, pre-pay her funeral expenses, pay for nursing home stays, and pay for her adult daycare. For example, Joseph testified that he attempted to place Lee Rose in a nursing home approximately four times. Joseph further testified that each stay lasted three to four days and cost approximately one thousand dollars per visit. The Appellants were unable to adduce any evidence that Joseph used the funds from Lee Rose's estate for anything other than items and issues directly relating to her continued care and support, and the magistrate clearly credited Joseph's testimony in this regard.

{¶ 28} The Appellants also assert that Joseph misused the Power of Attorney (POA)

granted him by Lee Rose to improperly deny Rochow a portion of their mother's assets upon her death. Specifically, on October 26, 2009, Lee Rose signed a deed transferrable upon her death of her residence over to Joseph and his sister, Karen. Rochow's name was not put on the deed. Thus, upon Lee Rose's passing, only Joseph and Karen will be entitled to the residence or any funds from its sale. Rochow also complains that Joseph improperly used his POA to make himself the joint and survivor owner of Lee Rose's financial accounts. The record establishes, however, that sometime prior to 2005, Lee Rose and Hurstle Anderson bought Rochow both a house titled only in her name and a car. Morever, Rochow failed to establish that any of Lee Rose's money was misspent or misappropriated by Joseph. We note that the trial court stated in its decision adopting the decision of the magistrate that it will monitor any future expenditures made by Joseph from Lee Rose's accounts. Thus, we cannot find that the trial court abused its discretion in holding that it was in Lee Rose's best interests for Joseph to be appointed guardian of her estate.

{¶ 29} Lastly, we find the trial court did not err by failing to appoint Attorney Webber as the guardian of Lee Rose's estate. The Appellants assert that Webber's knowledge and past experience as a court-appointed guardian qualifies him to be appointed guardian of the estate of Lee Rose. As well qualified as Webber may be, the record establishes that Joseph, her son, has been handling the estate of Lee Rose since 2007 when he assumed full responsibility for her care and support. No evidence exists in the record which demonstrates that any of Lee Rose's funds were misspent or misappropriated at any time. Accordingly, we cannot find that the probate court abused its discretion in concluding that it is in Lee Rose's best interest for Joseph to be appointed guardian of her estate, and not

Webber, regardless of his expertise in such matters.

{¶ 30}  The Appellants' second and third assignments of error are overruled.

{¶ 31}  All of the Appellants' assignments of error having been overruled, the judgment of the probate court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Susan M. Brasier
Cynthia M. Rose
Hon. Alice O. McCollum