[Cite as *In re C.W.*, 2014-Ohio-2934.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | CASE NOS. 13 CO 44 |
| GUARDIANSHIPS OF: | ) | 13 CO 45 |
| | ) | 13 CO 46 |
| C.W. | ) | |
| D.W. | ) | OPINION |
| K.Y. | ) | |
| | ) | |
| | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeals from the Court of Common Pleas, Probate Division, of Columbiana County, Ohio Case Nos. 11 GDMI 48; 11 GDMI 49; 11 GDMI 50 |
| JUDGMENT: | Affirmed. |
| APPEARANCES: | |
| For Appellants Norman & Marilyn VanPelt: | Atty. Brian J. Macala 117 South Lincoln Avenue Salem, Ohio 44460-3101 |
| For Appellee James & Lisa Youngblood: | Atty. Charles C. Amato Atty. Lynsey Lyle-Opalenik Amato Law Office 991 Main Street Wellsville, Ohio 43968 |

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: June 26, 2014

WAITE, J.

{¶1} These three appeals arise out of the Probate Division of the Columbiana County Court of Common Pleas regarding the removal of Appellants, Norman and Marilyn VanPelt, as guardians and the appointment of a successor guardian over three orphan children (C.W., D.W. and K.Y.). Although there are three separate appeals, the issues in each are identical. The guardianships arose after the mother of the children was murdered by her estranged boyfriend, who then committed suicide. This boyfriend was the father of two of the children. Appellants were appointed guardians of the children, as they had previously cared for the children as foster parents. In January of 2013, Appellee James Youngblood, the paternal grandfather of two of the children, filed a motion to become the successor guardian of the children after Appellants had denied him his companionship rights. At the hearing on the motion to appoint a successor guardian, a prior guardian ad litem testified that she heard Appellant Norman VanPelt say that the child D.W. was acting unruly due to his "black blood." (Tr. p. 13.) The child is bi-racial, the mother being Caucasian and the father African American. The court eventually granted the motion to appoint Appellee as successor guardian.

{¶2} On appeal, Appellants argue that the court erred by allowing a former guardian ad litem to testify. Appellants contend that the evidence should have been excluded because it was irrelevant, since the guardian ad litem's term had expired prior to the date of the hearing. Although the guardian ad litem had been appointed for a limited purpose and her guardianship ended prior to the hearing to appoint a successor guardian, it is apparent from the record that her testimony was relevant.

She had direct personal knowledge of the condition of the children and their interaction with Appellants within eight months of the filing of Appellee's motion to be appointed successor guardian.

**{¶3}** Appellants also argue that the court's decision was against the manifest weight of the evidence. Appellee presented evidence that Appellants abused one of the children, used a racial slur regarding one of the children, forced the children to kill animals as part of their chores, and flaunted the court's visitation orders. Appellants presented no evidence at the hearing. The weight of the evidence supports the court's decision. Appellants' arguments are without merit and the judgment of the trial court is affirmed.

### History of the Case

**{¶4}** Rachel W. was the natural mother of minor children C.W. (d.o.b. 8/1/09), D.W. (d.o.b 7/17/06) and K.Y. (d.o.b. 7/23/08). Steven Youngblood was the natural father of C.W. and K.Y. D.W.'s father has never been involved in the child's life nor participated in any court proceeding regarding the child. At the request of the Columbiana County Department of Jobs and Family Services (CCDJFS), the child D.W. was placed in the foster care of Appellants Norman and Marilyn VanPelt on March 1, 2008 after being adjudicated an abused, neglected or dependent child. K.Y. was placed in foster care with Appellants shortly after the child was born in 2008. C.W. was placed in foster care with Appellants on September 22, 2010, when the child was one year old. It was on that date that the mother of the children, Rachel

W., was murdered by her estranged boyfriend Steven Youngblood. Youngblood then turned the gun on himself and committed suicide.

{¶5} On August 8, 2011, Appellants filed a petition for guardianship of the children in the probate division of the court of common pleas. The probate court issued an interim order on August 16, 2011, appointing Appellants as temporary guardians. The paternal grandparents James and Lisa Youngblood joined the guardianship action, and the maternal grandfather and step-grandmother, Allan and Nancy W., filed an application for guardianship as well. A hearing was scheduled for September 28, 2011, but the parties informed the court that an agreed entry had been formulated in which Appellants would be co-guardians and the grandparents would have visitation rights once per month. The agreed entry was approved and filed on December 7, 2011.

{¶6} On December 20, 2011, Appellants filed a motion to suspend the visitation rights of Appellee and the maternal grandfather. Tere Rufener was appointed on February 15, 2012, as guardian ad litem for the proceedings. On May 2, 2012, a hearing was held and the motion to suspend visitation was denied. The guardian ad litem's duties terminated on May 10, 2012.

{¶7} On January 31, 2013, Appellee filed a motion to show cause in contempt against Appellants for failure to allow visitation and a motion to appoint a successor guardian.

{¶8} On March 22, 2013, Appellants filed petitions to adopt the three children.

**{¶9}** On April 11, 2013, the probate court found Appellants in contempt for denying court-ordered visitation to Appellee. Appellants were allowed to purge their contempt by giving Appellee visitation every other weekend from Friday to Sunday. All pending motions were stayed while the contempt was being purged. On August 8, 2013, the court found that Appellants had purged their contempt, and a hearing on the adoption petition was set for September 27, 2013. The hearing took place, but no decision was made.

**{¶10}** On October 2, 2013, the court heard Appellee's petition for successor guardianship. Four witnesses testified: former guardian ad litem Tere Rufener, Reverend Roosevelt Thompson, MaryAnne Grace (maternal grandmother of the children), and Appellee. Rufener testified that Norman VanPelt used a racial epithet and about the poor conditions of Appellants' home, and the loving relationship between the children and Appellee. Rev. Thompson gave mainly character testimony about Appellee and noted the loving relationship between Appellee and the children. Ms. Grace spoke about the relationship between the Appellants and the children. Appellee testified that Appellants abused the children, beating them in the face until they drew blood and tying them to a chair as discipline, their refusal to allow visitation and failure to allow telephone communication with the children. Appellee also testified to Appellants' denial that they had to obey court orders and that they had been held in contempt for disobeying court-ordered visitation. He also related Appellants' failure to get D.W. enrolled in school, that they forced the children cut the

heads off of chickens, told them their father was burning in hell, and testified generally as to the dangerous conditions in the home.

**{¶11}** The court held an in camera inspection of the children and then rescheduled the remainder of the hearing for a later date. On October 9, 2013, the parties filed a joint notice with the court stating that no more evidence would be submitted, waiving final argument and allowing the court to proceed with judgment. We note that Appellants had presented no evidence.

**{¶12}** On October 30, 2013, the court granted the motion to appoint Appellee as successor guardian. Appellants filed a motion for stay of execution, which was denied on October 31, 2013. In the judgment entry denying the stay, the court stated that Appellants had expressed racist sentiments with regard to one of the children, and there was uncontroverted evidence that one or more of the children had been subjected to physical abuse. For these and other reasons, the court found it in the best interests of the children to remove Appellants as guardians and appoint Appellee as successor guardian. These timely appeals followed.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE TESTIMONY OF A FORMER GUARDIAN AD LITEM OVER THE OBJECTION OF THE APPELLANTS.

**{¶13}** Appellants argue that the court committed reversible error by allowing former guardian ad litem Tere Rufener to testify at the hearing on the motion to appoint a successor guardian. Rufener had been the guardian ad litem during a

proceeding dealing with whether Appellee's visitation rights should be terminated. Rufener testified that a racial comment was made by Norman VanPelt to the effect that child D.W. was unruly due to his "black blood." (Tr., p. 13). Appellants objected to the testimony on grounds of relevance, and the objection was overruled. Appellants believe this ruling was erroneous and invalidated the court's ultimate decision. In support, Appellants primarily rely on Evid.R. 402 and Sup.R. 48(D) regarding the duties of a guardian ad litem.

{¶14} Evid.R. 402 states that "[a]ll relevant evidence is admissible * * *." Trial judges have broad discretion in the admission or exclusion of relevant evidence. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). In a trial to the bench, the court is presumed to have considered only admissible evidence, unless the record indicates otherwise. *State Farm Mut. Auto Ins. Co. v. Travelers Prop. Caus.*, 5th Dist. No. CT2001–0065, 2002-Ohio-3687, ¶70.

{¶15} Sup.R. 48(D) states in pertinent part:

In order to provide the court with relevant information and an informed recommendation regarding the child's best interest, a guardian ad litem shall perform, at a minimum, the responsibilities stated in this division, unless impracticable or inadvisable to do so.

* * *

(13) A guardian ad litem shall make reasonable efforts to become informed about the facts of the case * * *.

**{¶16}** Appellants argue that the former guardian ad litem's testimony was irrelevant, primarily because they claim it was stale. Appellants contend that the guardian ad litem's observations occurred 17 months prior to the hearing on the motion to appoint a successor guardian. The record reflects that her guardianship ended in May of 2012, only 8 months prior to the time the motion to appoint a successor guardian was filed in January of 2013. Although the hearing on the motion was not held until October 2013, her actual testimony relates to the time leading up to the filing of the motion, and based on that earlier date of January 2013, her observations are not particularly stale or outdated. We find no abuse of discretion in the court's reliance on evidence that occurred during or just before the time period encompassed by the motion being heard, particularly in light of the fact that no evidence was submitted by Appellants and the testimony was uncontroverted.

**{¶17}** Appellants also argue that Rufener was not appointed guardian ad litem for purposes of the motion to appoint a successor guardian, and that only a guardian ad litem appointed for the specific purpose of the hearing at hand should have been allowed to testify. Appellants present no caselaw that supports their argument. Sup.R. 14(D)(4) states: "A guardian ad litem shall appear and participate in any hearing for which the duties of a guardian ad litem or *any issues substantially within a guardian ad litem's duties* and scope of appointment are to be addressed." (Emphasis added.) Although Rufener was appointed guardian ad litem in an earlier proceeding, her observations during that time do not immediately become irrelevant when her guardianship terminated on May 10, 2012. Her duties as guardian ad

litem, under Sup.R. 48(D)(13) included meeting with the children, parents, foster parents and any other significant individuals with relevant knowledge, to visit the children in their residence, to review records, and perform any other investigation necessary to make an informed recommendation. Appellants do not deny that Rufener performed all these tasks. Since she had direct knowledge of the children at their residence gained while Appellants were the foster parents, testifying about these observations in a subsequent guardianship proceeding involving Appellants and the children falls squarely within the scope of a guardian ad litem's duties under Sup.R. 48. That such information might be relevant to the issue of whether Appellants should continue to be guardians was up for the court to decide, and it is not difficult to see that it would be relevant in this case.

{¶18} There was no basis for excluding Rufener's testimony on grounds of relevance, and the first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE REMOVAL OF THE APPELLANTS AS CO-GUARDIANS OF THE MINOR CHILD WAS AN ABUSE OF DISCRETION AS THAT REMOVAL WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} Appellants argue that the decision of the trial court was against the manifest weight of the evidence. Appellate review of a decision removing a guardian and appointment of a successor guardian is a review for abuse of discretion, not manifest weight of the evidence. A guardian is deemed to be an officer of the

probate court. *In re Clendenning*, 145 Ohio St. 82, 93, 60 N.E.2d 676 (1945). The power of the probate court is superior to that of guardians appointed by the court. *Id.*; R.C. 2111.50(A)(1). Except for the disposition of gifts from a ward's estate, the power of the court relative to one declared a ward is to be exercised in the best interests of the ward. R.C. 2111.50(C)(1). A probate court's decision regarding matters involving guardianships will not be reversed on appeal unless the probate court's decision amounts to an abuse of discretion. *In re Estate of Bednarczuk*, 80 Ohio App.3d 548, 551, 609 N.E.2d 1310 (1992). It is well-settled that probate courts have broad discretion when appointing and removing guardians, and their decisions will not be reversed absent a showing of an abuse of that discretion. *Id.*; *In re Guardianship of Skrobut*, 7th Dist. No. 97CA18 (Apr. 30, 1998). An "abuse of discretion" is more than an error of judgment, it implies that the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶20}** Factual determinations of the court will not be disturbed if supported by some competent, credible evidence. *C.E. Morris v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. On review, the findings of a trier of fact are presumptively correct. *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273 (1984).

**{¶21}** Although R.C. 2111.50(A)(2)(c) allows the court to limit or deny any power to a guardian for good cause shown, courts have generally relied on the provisions of R.C. 2109.24, dealing with the removal of fiduciaries, as the standard

for removing a guardian. We have repeatedly held that R.C. 2109.24 governs the removal of guardians by the probate court. *In re Guardianship of Monus*, 7th Dist. Nos. 03 MA 128, 03 MA 129, 03 MA 130, 03 MA 131, 03 MA 132, 03 MA 153, 2004-Ohio-2808, ¶12; *In Matter of Guardianship of Weiss*, 7th Dist. No. 96 C.A. 135, 1997 WL 433554, p. *2 (July 28, 1997).

**{¶22}** R.C. 2109.24 states: "The court may remove any fiduciary * * * for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." In interpreting R.C. 2109.24, we held in *Guardianship of Weiss* that: "[I]t is discretionary with the trial court as to whether a guardian should be removed, and such removal may be based upon any just cause when the interest of justice demands it. The trial court need not find that the guardian's actions amounted to violations of the law or that his actions caused injury to the Ward or the Ward's estate." *Id.* "To warrant the removal of a guardian, a trial court need only find that the best interest of the Ward will be served by said guardian's removal." *Id.*

**{¶23}** Prior to 2007, R.C. 2109.24 stated: "The court may remove any such fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law." Appellants contend that this prior version gave the courts more leeway in removing fiduciaries and that the caselaw interpreting the prior statute should not be relied on. Both

versions are substantially the same and allow for removal either for cause or simply in the interest of the guardianship. Appellants' argument is not supported by the actual wording of the two versions of the statute. Appellants acknowledge that the court's decision to remove a guardian will not be reversed absent an abuse of discretion and that the court's findings are presumed to be correct.

{¶24} Appellants argue that the guardian ad litem's testimony is not credible, particularly the statement about the racial slur, because she said she was shocked by the statement, yet had not revealed it earlier. The purpose of the hearing for which Rufener was made a guardian ad litem was to determine whether Appellee's visitation should be suspended. Assuming Rufener was truthful in stating she was shocked by this comment, it would have been difficult to introduce the information into that hearing. Appellants and Appellants' behavior were not the subject of the specific hearing for which she was gathering information. If she had tried to testify about the comment, it likely would have been objected to and stricken from the record because it had no relevance to the subject of the hearing; whether Appellee should have his visitation rights terminated. In the subsequent hearing regarding the removal of Appellants as guardians and the appointment of a successor guardian, though, the comment appears to be highly relevant, and would go to the character and attitudes of the guardians toward the children and their paternal grandparent.

{¶25} Appellants focus on the supposedly erroneous admission of this racial comment as a reason for overturning the trial court's judgment, overlooking the many other facts in the record that support the judgment. Rufener testified about the poor

living conditions of Appellants' home, including the fact that all three children (two girls and a boy) had to share a bedroom. Appellants would not allow the children to use the telephone to call their grandparents. Appellee testified as to Appellants' interference with visitation, refusal to obey court orders, their statements that they did not have to obey court orders and were above the judge, their contempt conviction, and that they gloated over their belief that their adoption petition would be granted and they would never have to allow visitation with Appellee again. The adoption petition, though, was not ruled on. Appellee testified that Appellants failed to register D.W. in school on time, that they abuse the children by striking them in the face so hard that they drew blood, they tie them to chairs as discipline, and that they make the children perform gruesome chores such as cutting the heads off of chickens. Appellants did not rebut any of this evidence, and it is difficult if not impossible to reverse a case on evidentiary grounds with no evidence in the record opposing the evidence relied on by the court. Appellants' second assignment of error is overruled.

Conclusion

{¶26} Appellants object to the judgment of the trial court removing them as guardians and appointing a successor guardian on grounds of improper admission of evidence and manifest weight of the evidence. First, they object that the court allowed former guardian ad litem Tere Rufener to testify because she was not currently the guardian ad litem. They believe her testimony was irrelevant. The guardian ad litem had first-hand information about the children and the parties for a 13-month period that encompassed at least a part of the time period relevant to the

motion to appoint a successor guardian, and the trial court had broad discretion in allowing her to testify.  Second, Appellants' dispute the court's judgment based on the manifest weight of the evidence.  While this is the incorrect standard used for our review, Appellee established that Appellants beat the children, tied them to a chair as discipline, did not provide adequate housing, refused to obey visitation orders, and said they would continue to refuse to obey visitation orders in the future.  Appellants failed to present any evidence themselves.  There is substantial evidence supporting the trial court's judgment and it is affirmed as to all three cases on appeal.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.