IN RE GUARDIANSHIP OF SANTRUCEK.

[Cite as *In re Guardianship of Santrucek,*
120 Ohio St.3d 67, 2008-Ohio-4915.]

(No. 2007–1545—Submitted May 20, 2008—Decided October 2, 2008.)

Lanzinger, J.

{¶ 1} In this case involving a guardianship pursuant to R.C. Chapter 2111, we are asked to determine whether a person who has not filed an application to be appointed guardian, or who otherwise has not been made a party to the guardianship proceedings, has standing to appeal. We hold that she does not.

## Case History

{¶ 2} Bessie Santrucek resided in Elsie, Michigan, most of her life. She has two daughters: appellee, Victoria Wellington, an Ohio resident, and appellant, Jennie Hull, an Arizona resident. In 2005, appellee visited her mother in Michigan and became concerned about her behavior. She noticed that her mother was very forgetful and had trouble keeping her financial papers in order. Because of these concerns, in April 2006, appellee moved her mother, then 96 years old, to the Alterra Sterling House, an assisted-living facility in Newark, Ohio. After this move, appellee filed an application in the Licking County Court of Common Pleas to be named guardian of her mother's person.[1] Later she also filed a motion to be named guardian of her mother's estate and requested that appellant, her sister, Jennie, be kept informed of the proceedings.

{¶ 3} When appellant heard of the legal action, she filed a prehearing motion challenging the court's subject-matter jurisdiction, arguing that her mother's move to Ohio was involuntary. The trial court ruled that jurisdiction and venue were proper in Licking County. On appeal the Fifth District held that appellant lacked standing and dismissed her appeal.

{¶ 4} Appellant states that she did not apply to be named her mother's guardian in Ohio because the Ohio Revised Code does not permit Ohio nonresidents to be named guardians. See R.C. 2111.02 and 2109.21. She did, however, file a petition for appointment of a conservator in the probate court of Clinton County, Michigan. Under Michigan law, a conservator is responsible for management of a ward's property and other financial assets. See Mich.Comp.Laws Ann. 700.5401. In this respect, a conservator is similar to a guardian of an estate in Ohio.

## Legal Analysis

{¶ 5} It is a fundamental rule that an appeal may generally be instituted only by "parties who are able to demonstrate a present interest in the subject matter

---

1. The Revised Code provides that guardianships may be created over the person, estate, or both. A guardian of the person is responsible for the care and well-being of the ward, whereas a guardian of the estate is responsible for the management of the ward's property. See R.C. 2111.06, 2111.13, and 2111.14.

of the litigation which has been prejudiced by the judgment of the lower court." *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203. Because guardianship proceedings are not adversarial, but are in rem proceedings involving only the probate court and the ward, the requirements for standing to appeal are more elaborate. See *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794. To have standing in an appeal from a guardianship order, parties must either have an interest adverse to the ward's or have otherwise been aggrieved in some manner by the order. Id. at 115–116, 48 O.O.2d 107, 249 N.E.2d 794 (finding no standing for a guardian to appeal a determination that her ward had been restored to competency). Appellant was required to be a party to the litigation and to have had an interest that was prejudiced by the decision of the probate court before she could have standing to appeal in this case.

{¶ 6} The Fifth District Court of Appeals held that because appellant did not apply to be her mother's guardian, she did not possess the necessary interest in the guardianship proceedings to have standing to appeal. In so holding, the court of appeals relied in part on the Second District's decision in *In re Guardianship of Lee*, 2d Dist. No. 02CA3, 2002-Ohio-6194, 2002 WL 31528725, which held that Lee's nephew, who had failed to file an application to be appointed guardian, did not have standing to challenge the appointment of someone else as guardian.

{¶ 7} Appellant attempts to distinguish her situation from that of the nephew in *Lee* by pointing out that as a nonresident of Ohio she was ineligible to apply to be guardian. Also, rather than challenging who had been appointed guardian, appellant sought to contest only the probate court's jurisdiction to appoint a guardian for her mother. *Lee,* however, stands for the proposition that a person claiming an interest in a guardianship proceeding must take the necessary procedural steps to protect that claimed interest. Appellant did not do so.

{¶ 8} Appellant argues that because she was ineligible to be named her mother's guardian in Ohio she will have been denied any opportunity to challenge the probate court's jurisdiction if she is found to lack standing. She is mistaken. Even though as a nonresident she was prevented from applying to be her mother's guardian, other avenues for becoming a party to the proceedings and challenging the jurisdiction of the court were available. The record shows that appellant sought to challenge the probate court's jurisdiction at the early stages of the guardianship proceedings but was never made a party to those proceedings. She did not become a party to the action simply by virtue of the relationship with her mother; she was required to take affirmative action to become a party. If appellant had been an Ohio resident, as her mother's next of kin she would have been entitled to notice of the guardianship proceeding

pursuant to R.C. 2111.04(A)(2). But such notice merely apprises relatives of the pendency of the action and does not confer party status upon them. Appellee's motion requesting that appellant receive notice and be kept informed of the status of the proceedings is similar; it recognizes that appellant has an interest in the welfare of her mother, but is insufficient to give her standing as a party to the action.

{¶ 9} Appellant filed a notice of representation with the Licking County Probate Court, followed by a motion that challenged the probate court's jurisdiction. As a daughter, appellant certainly has an interest in the outcome of the guardianship proceedings, but nonparties are limited in the types of motions they may file. At the appellate level, the rules are similar, and App.R. 4(A) permits appeals only by parties to the case. Because she was not a party, the motion when filed was not proper.

{¶ 10} While appellant was precluded by statute from being named a guardian of her mother in Ohio, there were other means for her to have been made a party. She could have filed a motion to intervene under Civ.R. 24, and would have been permitted to intervene in the guardianship case if she could have shown she had an "interest relating to the property or transaction that is the subject of the action and [she] is so situated that the disposition of the action may as a practical matter impair or impede [her] ability to protect that interest, unless [her] interest is adequately represented by existing parties." Civ.R. 24(A)(2). Although she claimed an interest in the proceedings, appellant did not file a motion to intervene to protect that interest.

{¶ 11} The rules for intervention allow courts to maintain control of proceedings and permit parties to participate only when they have an actual interest in the guardianship proceedings. The creation of a guardianship is a significant event, and family, friends, or even concerned neighbors could all potentially be affected by the outcome of a guardianship proceeding. Not all such persons will have a legally sufficient interest to allow them to become parties to the proceedings, however.

{¶ 12} Moreover, intervenors have standing only to the extent necessary to protect the interest that justifies the intervention. This restriction on standing is particularly relevant in the context of an in rem guardianship proceeding, which, at its basic level, involves the court and the ward or potential ward and inherently limits any interest or standing of a third party. See *Love,* 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794. Although she could not be named personal guardian of her mother in Ohio, appellant did file a motion in a Michigan court asking to be named conservator of her mother's property. If appellant had sought and been granted participation through intervention in this case, her participation would have been limited to challenging the court's jurisdiction in Ohio and to protecting

her interest in being named conservator in Michigan. She would not have been able to challenge the court's appointment of her sister as guardian.

{¶ 13} We therefore hold that a person who has not filed an application to be appointed guardian, or who otherwise has not been made a party to the guardianship proceedings, has no standing to appeal.

### Conclusion

{¶ 14} A person seeking to appeal the decision of a probate court in a guardianship proceeding must have been a party to those proceedings to have standing to appeal the probate court's decision. Being related to the alleged incompetent is not enough to confer party status upon a person, nor is being served with notice of the proceedings. Additional action is required to become a party with the right to appeal. Filing an application to be appointed guardian is one avenue to becoming a party, but a person may also file a motion to intervene pursuant to Civ.R. 24.

{¶ 15} While we recognize that appellant took steps to protect her claimed interest by challenging the jurisdiction of the court early in the proceedings, she did not follow the proper procedure for becoming a party to the case. Thus, because she was never a party, she lacks standing to appeal the decision of the probate court. We affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

MOYER, C.J., and O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, LUNDBERG STRATTON, and CUPP, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 16} The majority opinion relies extensively on *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794, to conclude that Jennie Hull has no standing to appeal. In *Love,* a guardian was prevented from challenging the termination of her guardianship. Hull is not the guardian of her mother. She is also not challenging the termination of a guardianship. She is attempting to challenge the creation of a guardianship that she contends the court did not have jurisdiction to create. These differences show that *Love* is not dispositive in this case.

{¶ 17} The majority opinion states that *Love* stands for the proposition that "[t]o have standing in an appeal from a guardianship order, parties must either have an interest adverse to the ward's or have otherwise been aggrieved in some manner by the order." The majority opinion does not explain why its interpretation of *Love* is so much more restrictive than this court's interpretation of *Love* in

1982, when it stated, "This court has long recognized that, in construing the Rules of Appellate Procedure, the law favors and protects the right of appeal and that a liberal construction of the rules is required in order to promote the objects of the Appellate Procedure Act and to assist the parties in obtaining justice. *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 115, 249 N.E.2d 794." *Maritime Mfrs., Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 258, 24 O.O.3d 344, 436 N.E.2d 1034. "All through the centuries, in the growth of the systems of common law and equity, the great threat has been that the procedural rules have, from time to time, become so complicated and technical that they have operated to delay substantive justice, to ensnare and entrap the unwary and to defeat the real purposes for which they were supposed to have been provided." *In re Guardianship of Wisner* (1947), 148 Ohio St. 31, 34, 34 O.O. 558, 72 N.E.2d 751.

{¶ 18} According to the laws of Ohio, Hull cannot become the guardian of her mother, because she lives out of state. R.C. 2111.02 and 2109.21. This court cannot change that fact, but we can change the unjust results that flow from it, and we should because we are required to liberally construe the appellate rules "to assist the parties in obtaining justice." *Maritime Mfrs., Inc.*, 70 Ohio St.2d at 258, 24 O.O.3d 344, 436 N.E.2d 1034. In *Maritime Mfrs., Inc.*, we also stated that "this court has consistently adhered to the policy of exercising all proper means to prevent the loss of valuable rights when the validity of a notice of appeal is challenged solely on technical, procedural grounds." Id. at 258–259, 24 O.O.3d 344, 436 N.E.2d 1034. I recognize that Hull was not a party in the proceedings below. But appellate standing is a matter of judicial policy in Ohio, and we should recognize the party status of a person who acted as if she were a party and who was treated as if she were a party throughout the proceedings.

{¶ 19} Hull also did not file a motion to intervene; it is unclear why she failed to do so, because the issue was not addressed in the briefs or at oral argument. But Hull challenged the jurisdiction of the probate court early in the proceedings and defended her position vigorously throughout the proceedings. The probate court treated Hull as if she were a party by calling her a movant, allowing her attorney to examine witnesses, and telling her attorney, "[Y]ou can decide to appeal whatever adverse rulings that this Court may possibly issue now or in the future." The court treated Hull as if she had intervened, and so should we.

{¶ 20} One federal circuit court allows appeals by nonparties often enough to have developed a three-part test to determine whether a nonparty may appeal. *Secs. & Exchange Comm. v. Forex Asset Mgt., L.L.C.* (C.A.5, 2001), 242 F.3d 325, 329. Another federal circuit court considers appeals by nonparties when (1) the party participated in the proceedings below and (2) the equities favor hearing the appeal. *Secs. & Exchange Comm. v. Wencke* (C.A.9, 1986), 783 F.2d 829, 834–835. " '[A]ppeals by those who participated as if parties are frequently enter-

tained despite a failure to achieve formal status as a party.' 15A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3902.1 (2d ed.1992)." *In re Orshansky* (D.C.App.2002), 804 A.2d 1077, 1090. Moreover, the United States Supreme Court has stated, "We have never * * * restricted the right to appeal to named parties to the litigation." *Devlin v. Scardelletti* (2002), 536 U.S. 1, 7, 122 S.Ct. 2005, 153 L.Ed.2d 27.

{¶ 21} The very nature of the proceedings in this case militates for a liberal construction of the rules governing appeal. This case does not involve one party battling with another party. In that situation, it makes good sense to tightly restrict the ability of nonparties to appeal a judgment. This case involves only one party, a ward who has been adjudged incapable of managing her own affairs. An attorney, who was not the guardian ad litem, appeared at the proceedings below representing the ward and stated that his client had "indicated that she would prefer to return to the State of Michigan and that she would prefer to have her daughter Jennie [Hull] handle her finances rather than the other daughter." In this case, we should exercise liberality in allowing a nonparty to appeal the decision of the probate court.

{¶ 22} It is unjust and inequitable to prevent Hull from challenging the lower court proceedings. She is concerned that her 96–year–old mother was removed from her home in Michigan and is being forced to live out the rest of her days in a strange location. Anyone with an elderly parent can imagine the pain of seeing that parent held against her will; I consider Hull to be aggrieved by the lower court decision. Even the majority concedes that Hull "certainly has an interest in the outcome of the guardianship proceedings."

{¶ 23} Furthermore, in this case, the current resolution prevents a case filed in Michigan from proceeding. At a minimum we should reverse the judgment and remand the cause with instructions for the lower court to await the resolution of Hull's action for conservatorship in Michigan. If Bessie Santrucek was removed from Michigan involuntarily, her residence is in Michigan, see *State ex rel. Florence v. Zitter*, 106 Ohio St.3d 87, 2005-Ohio-3804, 831 N.E.2d 1003, at ¶ 25, where any competent person can be a guardian, Mich.Comp.Laws Ann. 700.5313.

{¶ 24} One of the problems highlighted by this case is the incentive an Ohio resident has to move her parent to Ohio to prevent her non-Ohio-resident sibling from being eligible to serve as guardian. We should not wait for the General Assembly to address this problem. Our legal system should help resolve family conflict, not provide a ready avenue to exacerbate it.

{¶ 25} The principles of equity and justice cry out for us to reverse the judgment of the court of appeals. I dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

**CUPP, J., dissenting.**

{¶ 26} I respectfully dissent because I believe that under the unusual circumstances of this case, Hull should be permitted to appeal the probate court's judgment that the probate court had jurisdiction to appoint a guardian for Santrucek, Hull's mother.

{¶ 27} The dispute before the probate court concerned whether Hull's mother voluntarily left Michigan and became a resident of Ohio, whether she left Michigan involuntarily, or whether she intended to leave Michigan only temporarily. R.C. 2111.02(A) provides that an Ohio county probate court has jurisdiction if the ward "is a resident of the [Ohio] county or has a legal settlement in the county." If the Ohio probate court did not have jurisdiction, then Hull could continue to seek appointment as her mother's conservator in Michigan. If the Ohio probate court had jurisdiction, Hull, who is not a resident of Ohio, would be ineligible for appointment in Ohio, and the Ohio proceedings would prevent her from being appointed conservator by a Michigan court. R.C. 2109.21(C) (with certain exceptions, guardians must be residents of the Ohio county where the ward resides); *In re Clendenning* (1945), 145 Ohio St. 82, 30 O.O. 301, 60 N.E.2d 676, paragraph two of the syllabus (guardianship judgment "binds all the world").

{¶ 28} Consequently, in my judgment, Hull had a sufficient interest in contesting the jurisdiction of the Ohio probate court—namely, her interest in being named her mother's conservator in Michigan. However, while Hull participated in the proceedings before the probate court, she did not move to intervene as a party in those proceedings.

{¶ 29} I agree with the majority that ordinarily, a person in Hull's position, i.e., a person who seeks to contest a probate court's jurisdiction to proceed, should seek to intervene as a party. However, in this case, the probate court allowed Hull to present evidence at the guardianship-appointment hearing, allowed her lawyer to examine witnesses at that hearing, and even told her attorney that Hull "can decide to appeal whatever adverse rulings that this Court may possibly issue now or in the future." Under these unique circumstances, I believe that Hull should be allowed to appeal the decision of the probate court concerning its jurisdiction in this case.

{¶ 30} For these reasons, I dissent.

––––––––––

Vorys, Sater Seymour & Pease, L.L.P., William G. Porter II, and Michael J. Hendershot; and Paul D. Harmon, for appellant.

Schottenstein, Zox & Dunn Co., L.P.A., and Kevin R. McDermott; and William Douglas Lowe and Russell Suskind, for appellee.