[Cite as *In re Guardianship of Sweeney*, 2016-Ohio-3260.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103285

# IN RE: GUARDIANSHIP OF TERESE SWEENEY

## [Appeal by Julie Sweeney]

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2011 GRD 150554

**BEFORE:** Jones, A.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** June 2, 2016

**FOR APPELLANT**

Julie T. Sweeney, pro se
445 Alfreton Court
Severna Park, Maryland 21146


**ATTORNEYS FOR APPELLEE**

Franklin J. Hickman
John R. Harrison
Hickman & Lowder Co, L.P.A.
1300 East 9th Street, Suite 1020
Cleveland, Ohio 44114

LARRY A. JONES, SR., A.J.:

**{¶1}** In this appeal, movant-appellant, Julie Sweeney, challenges the probate court's decision denying her request to intervene in this guardianship proceeding, as well as other actions taken by the court. We find that Julie has standing only as it relates to the court's decision regarding her motion to intervene (first assignment of error), and reverse the court's decision denying same. We disregard her remaining two assignments of error.

## I. Factual and Procedural Background

**{¶2}** The ward of this guardianship proceeding is Terese Sweeney, a developmentally disabled woman in her 50s. She is one of the nine living children of John and Regina Sweeney.[1] At all relevant times, Terese's parents, and two of her siblings — Cecile Muehrecke, a medical doctor, and appellee James Sweeney — have resided in the Cleveland area.[2] The remaining siblings live out of the state of Ohio; Julie lives in Maryland. Terese has remained close and connected to her parents and all of her siblings, but, presumably because of their proximity to Terese and Cecile's medical expertise, her parents, James, and Cecile particularly worked together in making certain that Terese's day-to-day needs were met.[3]

**{¶3}** Terese was born in the Cleveland area, and has lived there her entire life. She resided with her family through young adulthood, at which time she went to live in a

---

[1]There were ten Sweeney children, but one, John Sweeney III, passed away in 1994.

[2]Terese's mother passed away in 2014.

[3]The record demonstrates that the out-of-state siblings frequently traveled to Cleveland and

group home that was founded, in part, by her parents. She has worked at various "workshops" run by the Cuyahoga County Board of Developmental Disabilities, and has gained much fulfilment through her work. Terese's parents expressed their "intent and desire" that Terese continue to reside in the Cleveland area. *See* January 16, 2013 Nomination of Guardian and January 19, 2013 Nomination of Guardian.

{¶4} In 2009, Terese's mother became her guardian. In 2011, because of the mother's declining health, James took over as successor guardian. Around the same time, the family had concerns about Terese's care, and she was moved out of the home where she had been living. She moved in with James while the family addressed how to proceed. There were many suggestions among the family members, one of which, proposed by at least Julie, was that Terese move to the east coast, where several of the siblings lived.

{¶5} Julie's suggestion did not come to be, however, and Terese eventually relocated to a group home in Fairview Park, a Cleveland suburb. Tensions in the family developed as James, citing concerns for Terese's smooth transition to her new home, limited Terese's visitors and visits out of the home.

{¶6} In late December 2011, James did allow Terese to travel to Julie and another sister's homes. After that visit, Julie expressed concerns to the family about Terese having an "itchy rash," which was later confirmed to be scabies. James addressed the concerns with the group home manager and various measures were taken to attempt to

would spend time with Terese, and Terese traveled out of state to their homes as well.

alleviate the rash. Julie and other siblings also expressed concerns about other physical health issues (oral hygiene and nail grooming), as well as mental health issues.

{¶7} In March 2012, another out-of-state sister came to Cleveland for a visit and, in addition to the skin issues, also shared her concern with the family about Terese's mental health because she saw Terese have crying episodes. The concern about Terese's crying episodes, along with the rash, again generated much family discussion, during which hurt feelings and frustrations abounded. During this time, Cecile asked to be removed from the family email threads.

{¶8} In November 2012, Julie filed a motion for review of the guardianship, citing "changed circumstances in the health and welfare" of Terese; she amended her motion in January 2013 to include out-of-state siblings Rosemary Hsu, Francis Sweeney, Regina Sweeney, and Margaret Muldoon (collectively "movants"). The movants filed a motion for mediation, which the trial court granted; the movants and James attempted, unsuccessfully, to mediate their concerns.

{¶9} In August 2013, James filed a guardian report, which noted that there were no major changes in Terese's physical or mental condition. In October 2013, the movants challenged James's report by filing a motion for an investigation of Terese's medical condition and for a supplemental report.

{¶10} In June 2014, the movants filed a motion to intervene under Civ.R. 24(A), for visitation and for further relief; James opposed the motion. In August 2014, a hearing before a magistrate was held on the movants' motion. In September 2014, the magistrate

issued a decision denying the movants' request to intervene and set the matter for a review hearing for the purpose of investigating the movants' allegations against James. The magistrate also assigned a court investigator to the case. The movants filed objections to the magistrate's decision.

{¶11} In November 2014, the court overruled movants' objections and adopted the magistrate's decision. The court also agreed with the magistrate's recommendation that the matter be set for a review hearing so that the movants could "fully express their concerns regarding the care received by [Terese] and [whether] the actions of [James are] appropriate."

{¶12} In January 2015, the court's investigator filed her report, in which she recommended that James continue as Terese's guardian. Four days of review hearings were held in January, February, and March 2015. At the conclusion of the hearings, James and the movants were permitted to file closing briefs, which they did. One of the movants' requests to the court in their closing brief was that James be removed as Terese's guardian and be replaced with a "suitable alternative to be determined by the Probate Court." The movants also indicated in their brief that Julie was "able and willing to make application to the Court to become Terese's guardian."

{¶13} In May 2015, the magistrate issued his decision that upheld, for the most part, James's conduct and set forth a formal visitation schedule and guidelines for communication. Over James's objection, the court allowed movants to file objections to

the magistrate's decision.[4]   In June 2015, the court overruled movants' objections, and adopted the magistrate's recommendation to allow James to continue as the guardian, as well as the recommended visitation schedule and communication guidelines.

{¶14} In July 15, Julie, pro se, appealed; the other movant siblings did not join her in this appeal.   Julie has assigned the following three assignments of error for our review:

> I.   The probate court improperly denied appellant's motion to intervene.
>
> II.   The probate court failed to enter orders in the best interest of the ward to uphold her rights and to remove the guardian.
>
> III.   The probate court's decision failed to comport with the law and the evidence.

## II.   Law and Analysis

### Julie's Standing to Appeal

{¶15} James contends that Julie "lacked standing to intervene in this case" and therefore, we "should dismiss this appeal for lack of standing without the need for oral argument."   This court requested that Julie show cause as to how she, as a nonparty, has standing to appeal.   *See* Motion Nos. 487930, 488702, and 489329.   After review, we find that Julie has standing to appeal the denial of her motion to intervene.

{¶16} Generally, unless a person is a party in the lower court case, he or she does not have standing to appeal.   *In re Stanley*, 9th Dist. Summit Nos. 20128, 20131, and 20132, 2000 Ohio App. LEXIS 4803, 7 (Oct. 11, 2000).   An appeal may generally be

---

[4]James's objection was based on the movants' nonparties status.

instituted by a party who is able to "demonstrate a present interest in the subject matter of the litigation which has been prejudiced by the judgment of the lower court." *Willoughby Hills v. C.C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992). To have standing to appeal an order in a guardianship proceeding, the person claiming an interest in the proceeding must have taken the "necessary procedural steps to protect that claimed interest." *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 5.

{¶17} In *Santrucek*, the party attempting to appeal was the daughter (an Arizona resident) of a 96-year-old woman; the daughter attempted to challenge the trial court's subject matter jurisdiction. The ward (the 96-year-old mother) had been moved from Michigan to Ohio by her other daughter, who resided in Ohio and who filed an application in Ohio to be designated the mother's guardian. The Arizona daughter contended that her mother had been moved involuntarily, and filed a motion challenging the Ohio court's subject matter jurisdiction. The Arizona daughter had filed a petition for appointment of conservator in Michigan, which under Michigan law, operates similar to guardian of estate in Ohio.

{¶18} The trial court ruled that it had jurisdiction, and the Arizona daughter appealed. The Fifth Appellate District held that the daughter did not have standing and dismissed her appeal. *In re Guardianship of Santrucek*, 5th Dist. Licking No. 06CA130, 2007-Ohio-3427.

{¶19} On appeal to the Ohio Supreme Court, the court held that a person who has

not applied to be appointed the guardian of an Ohio resident, and also has taken no other step to become a party to the guardianship proceedings, does not have standing to appeal decisions of the probate court. *Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, at ¶ 8-12. The court specifically stated that the daughter could have filed a motion to intervene. "Ordinarily, in order to have the right to appeal, one must either have been a party to the case in the trial court or have attempted to intervene as a party." Painter and Dennis, *Ohio Appellate Practice*, Section 1:27 (2007 Ed.). Thus, a person who is not a party to an action and has not attempted to intervene as a party lacks standing to appeal. *In re Addington*, 4th Dist. Scioto No. 94 CA 2271, 1995 Ohio App. LEXIS 3240, 5 (July 31, 1995), citing *State ex rel. Jones v. Wilson*, 48 Ohio St.2d 349, 358 N.E.2d 605 (1976).

{¶20} But guardianship proceedings are different in nature from other civil actions. Specifically, guardianship proceedings are not adversarial; rather, they are in rem proceedings involving only the probate court and the ward. *Santrucek* at 69. Because of the nature of the proceedings, therefore, the "requirements for standing to appeal are more elaborate." *Id*. For example, in *Santrucek*, the Arizona daughter, who sought to appeal, as mentioned, had not filed a motion to intervene, and therefore, had not been a party to the trial court proceeding. The Ohio Supreme Court stated that in order to have standing to appeal, she had to have been a party and had "an interest that was prejudiced by the decision of the probate court * * *." *Id*. The court noted that the daughter's interest would have been challenging Ohio's jurisdiction and protecting her Michigan

petition for being named conservator.

**{¶21}** Here, Julie did attempt to become a party in the proceedings by filing a motion to intervene. For the reasons stated above, because of the nature of the proceedings, the filing of the motion to intervene does not automatically grant her standing to appeal, however. Our review of the record demonstrates that, although Julie and her movant siblings were not parties, the trial court afforded them considerable opportunity to be heard and participate. But, because of her nonparty status, Julie was foreclosed from Terese's medical records, which she unsuccessfully sought to obtain. We find that that constitutes an interest in the proceeding and that Julie was prejudiced from her ability to pursue it because of the trial court's denial of her motion to intervene. She, therefore, has standing to file this appeal. *Januzzi v. Hickman*, 61 Ohio St.3d 40, 45, 572 N.E.2d 642 (1991). Her standing is limited, however, to appealing the denial of her motion to intervene. *See In re D.S.*, 9th Dist. Summit No. 24554, 2009-Ohio-4658, ¶ 7. We now consider the merits of Julie's motion to intervene.

**Civ.R. 24(A) Intervention**

**{¶22}** Julie filed her motion to intervene under Civ.R. 24(A), which governs intervention of right, and provides as follows:

> (A) Intervention of right. Upon timely application anyone *shall* be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(Emphasis added.)

{¶23} The Ohio Supreme Court has referred to the liberal construction generally accorded Civ.R. 24 in favor of intervention. *State ex rel. Watkins v. Eighth Dist. Court of Appeals*, 82 Ohio St.3d 532, 534, 696 N.E.2d 1079 (1998). One objective a liberal construction of Civ.R. 24(A) serves is judicial economy, by avoiding a multiplicity of actions. *Creter v. Council of City of Westlake*, 8th Dist. Cuyahoga No. 49848, 1985 Ohio App. LEXIS 6764, 2 (Aug. 1, 1985).

{¶24} Our review of a judgment granting or denying a motion to intervene is the abuse of discretion standard. *In re R.W.*, 8th Dist. Cuyahoga No. 101742, 2015-Ohio-1031, ¶ 13. A court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).[5]

{¶25} In denying Julie's motion to intervene, the trial court relied on *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067. *Spangler* did provide, as the trial court referenced, that nonparties to a guardianship proceeding with information relating to the guardianship may relay their information and concerns to the court. The *Spangler* court reasoned that the probate court, as "superior guardian," has the authority to receive information from nonparties, and also to remove a

---

[5]"Commentators suggest that the discretion afforded the trial court under the intervention as of right provisions of Civ.R. 24(A), which provides that the court 'shall' permit intervention, is a more limited form of discretion than the discretion afforded by Civ.R. 24(B) for permissive intervention." *In re J.T.F.*, 2d Dist. Greene No. 12-CA-03, 2012-Ohio-2105, ¶ 21.

guardian on its own.

{¶26} But *Spangler* is somewhat distinguishable from this case, in that it involved a county board of developmental disabilities that sought to intervene, while this case involves a sibling who sought to intervene. We recognize that Julie being related to Terese does not in and of itself confer party status upon Julie. *See Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, at ¶ 12. But, under the circumstances in this case, we find that Julie had an interest in the proceeding (attempting to obtain Terese's medical records), her interest may be impeded by not being a party, and it is not presently aligned with James's interest.[6] Thus, with the liberal construction of Civ.R. 24(A) in mind, balanced with the unique nature of guardian proceedings, we find that the trial court abused its discretion in this case by not allowing Julie to intervene.

{¶27} In light of the above, the first assignment of error is sustained. The second and third assignments of error are disregarded.

{¶28} Judgment reversed as it relates to the denial of Julie's motion to intervene; case remanded. [7]

It is ordered that appellant recover of appellee costs herein taxed.

---

[6]Any attempt Julie may make to obtain Terese's medical records will be governed by the Health Information Portability and Accountability Act of 1996 ("HIPPA").

[7]Because Julie was the only movant who appealed, this court's judgment relates solely to her.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Probate Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR