[Cite as *In re Guardianship of Thomas*, 2016-Ohio-7793.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| Guardianship of Jacqueline Thomas, | : | No. 16AP-292 |
| | | (Prob. No. 549364) |
| (Stephanie Thomas, | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on November 17, 2016

**On brief:** *Stephanie L. Thomas*, pro se.
**Argued:** *Stephanie L. Thomas*.

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

TYACK, J.

{¶ 1} Stephanie Thomas is appealing her removal as guardian of the person of her sister, Jacqueline Thomas. For the following reasons, we affirm the judgment of the probate court.

{¶ 2} In 2015, the Franklin County Probate Court received a report from a representative of Southeast, Inc. that Stephanie was not transporting Jacqueline to receive necessary medication. A representative of the probate court later contacted Stephanie about the problem. The representative felt that Stephanie was having trouble fulfilling her duties as guardian, in part, because Jacqueline was a very challenging ward.

{¶ 3} The probate court conducted an evidentiary hearing before a magistrate on the matter. The magistrate concluded that Stephanie should be replaced as the guardian for the best interest of Jacqueline and filed a magistrate's decision on March 1, 2016, which reflected that conclusion.

{¶ 4} On March 3, 2016, Stephanie filed objections to the magistrate's decision.[1] The probate court reviewed the issues and filed on April 15, 2016 a detailed judgment entry which included adopting the magistrate's decision. The entry also found that Jacqueline is clearly still in need of a guardian but Stephanie is not a person with the capability of controlling her sister and providing help. The court indicated that it was receptive to the father of the girls becoming the guardian.

{¶ 5} Stephanie has appealed the findings of the probate court. She has assigned 14 errors for our consideration:

> 1. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the irrelevant invalid information the magistrate's reasoning applied to be based on the bias of the appellant's political interest.
>
> 2. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the constitutional violating reasoning of the magistrate's decision to go by information in the complaint deposition about irrelevant invalid rumors of the appellant's participation in legislative matters.
>
> 3. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of competency.
>
> 4. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the witness evidence.
>
> 5. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence that showed none of the companies mentioned in the complaint appeared before either court with representation and none where actual licensed doctors mentioned in the complaint.

---

[1] Although appellant attached to her appellate brief a transcript of the hearing before the magistrate, she did not file the same with the court as required when she filed her objections. The transcript is not included in the record submitted to us by the clerk of court. Accordingly, the trial court was required to accept factual findings of the magistrate, and so must we.

6. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of the actual Southeast doctor's voice and statement in a phone call the doctor had with me stating it was his observation I was competent and demonstrated and effective job of the ward's care with all the responsibility of the ward.

7. The probate court made the error in not sustaining the objection of the magistrate's decision and to conduct the review without a required hearing by ORC 2101.24(W) 2101.24 Jurisdiction of probate court.

8. The probate court made the error in not sustaining the objection of the magistrate's decision to be based solely on the complaint deposition and not transcripts without prior notification to supply that could have been immediately brought in by that of holding a hearing with parties believing the entire record was transferred over.

9. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the reasoning of the magistrate was based off of federally prohibited evidence.

10. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of that the magistrates penalty was to excessive.

11. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of ORC 2111.13 Duties of guardian of person was applied properly to the care of the ward with evidence presented by the doctor Dr. Savagu of twin valley stating in a document to the court Stephanie Thomas was supporting the care of the ward.

12. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of on the dates the companies in the complaint depositions made the complaint the ward was in care of twin valley mental health with the doctor Dr. Savagu with evidence from her care source insurance. This was stated to the non doctor at netcare Lu an Ross by me over a phone conversation a week prior to her filing the complaint.

13. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of 2109.24 was wrongfully applied with that of the appellant never having a trust over the ward or a bond.

14. The probate court made the error in not sustaining the objection of the magistrate's decision to disregard the evidence of the magistrate's reasoning was based off of 3 questions including 2 irrelevant and invalid.

(Sic passim.)

{¶ 6} The magistrate's decision is relatively brief. In pertinent part, it reads:

On January 12, 2016, an investigation [sic] of this Court spoke with the guardian. The guardian's response was not pertinent to the best interest of the ward, and indicated deficits in focusing on her duties as guardian.

At hearing, the guardian displayed a similar flight of ideas and tangential reasoning. The ward displayed a belligerence which would challenge the most level headed guardian.

* * *

R.C. 2111.13(A)(1) requires that a guardian protect and control the person of the ward. The guardian has failed to do these things, and lacks the ability to receive, process, and act upon the information necessary to make appropriate decisions for a paranoid schizophrenic ward who resides in the community. It is therefore in the best interest of Jacqueline Thomas that Stephanie Thomas be removed as guardian.

{¶ 7} Nothing in the way of information in the magistrate's decision is invalid. Nothing in the magistrate's decision is objectionable. Indeed, the magistrate's decision seems sympathetic to Stephanie Thomas, but indicates that Jacqueline Thomas is more than Stephanie Thomas can handle, especially given the fact that Stephanie does not always think clearly herself at times. The observation about tangential thinking is consistent with the appellate brief filed in this court.

{¶ 8}   We have reviewed all 14 assignments of error and find that none of the allegations are the basis for finding error by the probate court judge who carefully reviewed the magistrate's decision and generated a judgment entry which contains a careful review of the pertinent law and facts.

{¶ 9}   This case demonstrates the challenges to be encountered in guardianship cases, especially when a pro se person is involved.  The brief filed by Stephanie Thomas lists her as "defendant-appellant."  It also lists the ward Jaqueline Thomas as "Defendant-appellant."  There are no defendants in this guardianship case.

{¶ 10} The certificate of service on the brief states "we mailed and sent a copy of this document to the plaintiff's counsel."  There was no plaintiff's counsel so we cannot tell who, if anyone, was sent a copy of the brief.  No person or entity filed a brief in response to or in support of Stephanie Thomas's position.

{¶ 11} However, the Supreme Court of Ohio has made clear who has standing to appeal guardianship cases:

> A person seeking to appeal the decision of a probate court in a guardianship proceeding must have been a party to those proceedings to have standing to appeal the probate court's decision. Being related to the alleged incompetent is not enough to confer party status upon a person, nor is being served with notice of the proceedings. Additional action is required to become a party with the right to appeal. Filing an application to be appointed guardian is one avenue to becoming a party, but a person may also file a motion to intervene pursuant to Civ.R. 24.

*In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, ¶ 14.  " 'It is a fundamental rule that an appeal may generally be instituted only by "parties who are able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced by the judgment of the lower court." ' "  *Id.* at ¶ 5, quoting *Willoughby Hills v. C.C. Bar's Sahara,* 64 Ohio St.3d 24, 26 (1992).  Because guardianship proceedings are not adversarial, but are in rem proceedings involving only the probate court and the ward, the requirements for standing to appeal are more elaborate.  *Guardianship of Santrucek*; *See In re Guardianship of Love*, 19 Ohio St.2d 111 (1969).  To have standing in an appeal from a guardianship order, parties must either have an interest adverse to

the ward's or have otherwise been aggrieved in some manner by the order. *Guardianship of Love* at 115-16 (finding no standing for a guardian to appeal a determination that her ward had been restored to competency). An appellant is required to be a party to the litigation and to have had an interest that was prejudiced by the decision of the probate court before she could have standing to appeal. *Guardianship of Santrucek* at ¶ 5.

{¶ 12} A person who is removed as a guardian has a recourse in the appellate courts. Stephanie Thomas was a party to the litigation and the probate court's decision prejudiced her by removing her as guardian. We, therefore, do not dismiss the appeal, but rule on the 14 assignments of error.

{¶ 13} We overrule the 14 assignments of error. We affirm the finding of the trial court that a new guardian should be or should have been appointed for Jacqueline Thomas.

*Judgment affirmed.*

DORRIAN, P.J., concurs in judgment only.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 14} I respectfully dissent from the decision of the majority, because I have concerns about the way in which this matter was brought to the Franklin County Court of Common Pleas, Probate Division's attention and the way in which the entire matter developed "a life of its own" from there. I would find that the trial court abused its discretion when it found an independent review pursuant to Civ.R. 53(D)(4)(d) clear and convincing evidence supporting its decision to remove Stephanie Thomas as Jacqueline Thomas' guardian.

{¶ 15} This matter began on December 31, 2015, when an unsigned complaint was emailed to the probate court based on hearsay, conjecture, and supposition by Jennifer O'Leary, LPCC, an employee of Southeast, Inc. ("Southeast"). She stated as follows:

Case No. 549364

Complaint:

I have been made aware by Netcare that Jacqueline Thomas' guardian, Stephanie Thomas has been probated to the hospital recently for her own mental health issues. I do not know specifics, but I do have concerns about Stephanie's ability to make sound decisions about Jacqueline's care when she does not seem to be taking care of herself. Netcare also informed the nurse, here at Southeast, that the police are called out to the Thomas home multiple times per day. The nurse informed me that she has had great difficulty getting Jacqueline in for her medication injection since being discharged from a psychiatric hospitalization in July 2015, and she had reached out to Stephanie numerous times for assistance but didn't receive any response. Jacqueline was recently hospitalized at OSU for psychotic symptoms. Shortly after being discharged from OSU, Jacqueline went to Netcare (12/30/15), and the clinician who assessed her was very concerned about Jacqueline's home life (she lives with her mother and sister, the guardian). The clinician stated that Jacqueline seemed very distressed and was reporting that her mother and sister never let her out of the house. All of us at Southeast are extremely concerned about Jacqueline's welfare and mental health, and we have not had much success utilizing the guardian to assist with her engagement in treatment.

Desired Resolution:

I hope that the Probate Court will consider assigning a new guardian for Jacqueline Thomas. I understand that there is now a Guardianship Service Board for wards of the state, and I am hoping they may be able to help in this matter.

Additional Information:

Jacqueline receives mental health services from Southeast, Inc. and is currently on a specific treatment team called the "Dream Team." The Dream Team provides case management services to adults with severe mental illness. Jacqueline's case manager is Sheree Sellars, and I (Jennifer O'Leary) am the supervisor for the team. Jacqueline also receives medication management services, which consists of seeing a psychiatrist or nurse practitioner and an RN.

**Note:** By typing my name below and sending this form via email, I acknowledge that the information included in this

form will be made a public record and placed in the corresponding guardianship file.

| 12/31/15 | Jennifer O'Leary, LPCC |
|----------|------------------------|
| Date | Name |

(Emphasis sic.)  (Jan. 15, 2016 Compl. at 2.)

{¶ 16} On January 19, 2016, probate court investigator, Keith B. Semones, filed a complaint disposition in the probate court record indicating that he had been assigned to "investigate a complaint that was received by the court from Jennifer O'Leary, a case manager supervisor for Southeast Inc.," in reference to Jacqueline Thomas, the ward of Stephanie Thomas.  (Jan. 19, 2016 Compl. Disposition at 1.)  The court investigator had spoken with the complainant O'Leary on January 6, 2016, and indicated that, "Ms. O'Leary could not provide much more information than she had already provided."  *Id.* The court investigator did state that, "Ms. O'Leary cited an example that Stephanie will not cooperate with the nurse at Southeast to bring Jacqueline to a clinic to receive an injection of medication to control her mental instability" and that Ms. O'Leary "also mentioned that she had received information that Stephanie had been 'probated' for mental health issues."  *Id.*   The probate court investigator also reported that he spoke with Stephanie Thomas and requested "Stephanie provide a doctor's letter indicating that Stephanie was mentally stable and able to make 'sound decisions' for Jacqueline.  During the entire conversation Stephanie was obsessive in her demands that I investigate Southeast Inc.  Stephanie's conversation was very flighty in ideas, tangential, rambling, disorganized and at times illogical."  *Id.*  The probate investigator concluded in his report: "[i]t is this investigator's opinion that Stephanie Thomas may possibly be incapable of being the guardian for Jacqueline which could be compromising her health and well being.  Therefore, I am requesting that this incident be set for a guardianship review hearing to determine Stephanie's competency and ability to serve as guardian of person for Jacqueline Thomas."  *Id.* at 2.

{¶ 17} The probate court's magistrate, Thomas A. Stone, held a hearing on February 29, 2016 "to consider the removal of Stephanie Thomas as guardian of the person of Jacqueline Thomas.  Appearances were made by the guardian and the ward."

(Mar. 1, 2016 Mag.'s Decision at 1.)   O'Leary of Southeast did not appear or testify.   The magistrate's findings of fact included erroneous information on the date of the complaint made by O'Leary of Southeast. The complaint had been received December 31, 2015 but not been filed by the probate court until January 15, 2016. The complaint disposition is also dated January 15, 2016, the same day the probate court actually filed O'Leary's complaint. But the time stamp on the complaint disposition has been altered with snopake and pen to reflect a later filing date of January 19, 2016.

{¶ 18} The magistrate cited R.C. 2109.04 as authority for removing Stephanie Thomas as Jacqueline's guardian.  This section governs removal of fiduciaries and relates more to financial issues; nor, is it specific to guardians of the person.  More apropos to the parties' situation and more consistent with the rationale cited by probate court throughout its investigation is R.C. 2111.50, providing that the probate court is the superior guardian of wards:

> (A)(1) At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships.
>
> * * *
>
> (2)(c) For good cause shown, the probate court may limit *or deny, by order* or rule, *any power that is granted to a guardian by a section of the Revised Code or relevant decisions of the courts of this state.*

(Emphasis added.) R.C. 2111.50(A)(1) and (2)(c).

{¶ 19} Our review of the probate court's decision and the evidence it considered is subject to an abuse of discretion standard.

> Evidentiary rulings lie within the broad discretion of the trial court and will form the basis for reversal on appeal only upon an abuse of discretion which amounts to prejudicial error. *See State v. Graham* (1979), 58 Ohio St. 2d 350, 352, 390 N.E.2d 805; *Barbeck v. Twinsburg Twp.* (1992), 73 Ohio App. 3d 587, 592, 597 N.E.2d 1204. *See, also,* Evid.R. 103(A).

*In re Briggs*, 9th Dist. No. 18117 (July 9, 1997).  The trial court's evidentiary findings will not be disturbed unless they are unreasonable, arbitrary, or unconscionable. *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980); *S.S. Kresge Co. v. Trester*, 123 Ohio St. 383 (1931), paragraph three of the syllabus.  Here, it is troubling that the probate court proceeded on an unsigned complaint by a service provider that potentially had a financial interest in the continued treatment of the ward, Jacqueline Thomas.

{¶ 20} Based on the initial complaint that included hearsay and supposition about Stephanie and that were relayed in both the investigator's and magistrate's opinions finding the pro se guardian "flighty," the probate court found, "[t]he clear and convincing weight of the evidence in this case establishes the fact that the guardian has failed to control the ward which although not intentionally, has endangered the ward. * * * All important communication has broken down between the guardian and *necessary caregivers.* Clear and convincing evidence has been presented at hearing indicating that Ms. Thomas has failed to address medical and placement decisions for Jacqueline." (Emphasis added.)   (Apr. 15, 2016 Entry Overruling Objs. to and Adopting Mag.'s Decision at 6.)

{¶ 21} In essence, a mental health service provider with a potential financial interest in treatment of the ward was permitted by the probate court to influence whether Stephanie Thomas remained her sister Jacqueline's guardian.  This occurred in spite of testimony from more than one witness at the guardianship removal hearing that it was Jacqueline, herself, who made the call to have Stephanie involuntarily removed from the home and examined for mental stability at Netcare.  (Feb. 29, 2016 Tr. at 13.)  There was also testimony that Stephanie and Jacqueline were no longer happy with the treatment at Southeast after a nurse was substituted for a psychiatrist to provide treatment to the ward.  (Tr. at 19.)  Additional testimony at the guardianship removal hearing indicated that Jacqueline had been receiving treatment elsewhere, at Twin Valley and at the office of a Mount Carmel family doctor.  Moreover, it was clear from multiple witness' testimony, that not only Stephanie Thomas, but other members of the family were without question unhappy with the care provided by Southeast.  *Id.*

{¶ 22} The trial court as the superior guardian did not specify in its decision that it preferred the care of Southeast for Jacqueline Thomas over other existing service providers named in the record. Rather, the investigator, the magistrate, and the judge all determined that the "flighty" pro se sister of Jacqueline was no longer capable of providing adequate care as the guardian of a difficult-to-handle ward. The magistrate and probate court reached their decisions in spite of corroborating testimony from other family members who testified to Stephanie Thomas' ability to care for her sister. (Tr. at 14-20.) Since Stephanie filed objections to the magistrate's report, the probate court was required to conduct an independent review of the record pursuant to Civ.R. 53. The evidence in the record does not rise to the level of clear and convincing without further development. I would find that the probate court abused its discretion in removing Stephanie as the guardian of Jacqueline based on the evidence cited in its decision and appearing in the record.

{¶ 23} Stephanie Thomas appeared in this appeal pro se, which was to her disadvantage. Based on the evidence in the record, Jacqueline clearly and convincingly is difficult to manage. Regardless, the evidence in the record falls short of being clear and convincing evidence to support the probate court's legal conclusions that Stephanie Thomas should be removed as Jacqueline's guardian. And it lends itself to a finding on appellate review that the decision was arbitrary and an abuse of discretion. More disturbing, the proceeding's genesis is an unreliable and self-serving complaint of a witness with a potential financial interest in the outcome of the hearing and who never appeared as a witness. The probate court acknowledges that the probate court's investigator could not obtain any further information from Southeast. (Entry Overruling Obj. to and Adopting Mag.'s Decision at 1.) (From the probate court's decision: "[o]n January 6, the court investigator spoke with Ms. O'Leary who referred him to Ms. LuAnn Ross, a counselor at NetCare. The court investigator was denied any information regarding the guardian, Stephanie Thomas.")

{¶ 24} I would vacate the decision of the probate court and remand it for a hearing that more fully explores the treatment options and providers available to the ward and the ability of the guardian to meet them. Additionally, I would subpoena Southeast to the

hearing and seek information the investigator was unable to obtain and also inquire who is the Social Security ("SSI") payee for Jacqueline as well as Southeast's ability and/or intention to become an organizational payee for her in place of the guardian.

{¶ 25} For these reasons, I respectfully dissent from the decision of the majority.

_____