[Cite as *In re Guardianship of Hyde*, 2024-Ohio-1878.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: GUARDIANSHIP OF ARIANA HYDE | : | APPEAL NO. C-230576<br>TRIAL NO. 2018003726 |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Probate Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 17, 2024

*Glenda A. Smith*, for Appellant Melissa Payne,

*Resch, Root, Philipps & Graham, LLC,* and *Derek Graham*, for Appellee Advocacy and Protective Services, Inc.

**BERGERON, Judge.**

{¶1}    Following years of mental health challenges and a severe mental health-related incident, Ariana Hyde (at age 18) was involuntarily committed to the care of the Southern Ohio Developmental Center ("SODC"). Given Ms. Hyde's serious mental health and cognitive diagnoses, appellee Advocacy and Protective Services, Inc. ("APSI") filed an application for guardianship. Appellant Melissa Payne (Ms. Hyde's mother) also sought guardianship at the same time. But because Ms. Payne struggled to acknowledge and address her daughter's mental health, the probate court opted to appoint APSI as guardian. Years later, frustrated with the delayed efforts to transition Ms. Hyde to a less restrictive environment, Ms. Payne moved to remove APSI as guardian and to appoint herself as guardian. Following a hearing, the magistrate denied the motions, citing APSI's attentiveness and its plan (created in partnership with SODC) to transition Ms. Hyde to a less restrictive setting. Ms. Payne objected to the magistrate's decision, but the probate court denied her objections and adopted the magistrate's decision. Ms. Payne now appeals.

{¶2}    At the outset, we acknowledge that it is clear from the record that Ms. Payne loves her daughter and is doing her best to look out for her daughter's interests. Unfortunately, the legal inquiry before us is not simply whether the parent genuinely cares for the child. When a child has significant needs, and a probate court has determined that the child's best interests are served by a different guardian, we cannot overturn that decision of the probate court unless it fails to comply with the governing legal standards. After a thorough and complete review of the record, we ultimately affirm the probate court's judgment denying Ms. Payne's motions.

I.

{¶3}   Ms. Hyde presented as a typical child until she began to experience psychotic symptoms at age 13.  Between the ages of 13 and 15, she was hospitalized repeatedly (some of her hospitalizations resulted from medication non-compliance while in Ms. Payne's care).  During this time, she engaged in self-harm.  Ultimately, she was diagnosed with schizophrenia with catatonia and developmental disabilities.  She returned to school and was placed on an Individualized Education Plan because she began struggling to keep up with her classwork.  But even with this support structure, she could not stay on top of her studies, and she eventually dropped out of school.

{¶4}   In 2017, Ms. Hyde went to live with her grandmother.  Ms. Payne was working and completing nursing school at the time and felt that the grandmother would have more time to supervise her.  But while living with her grandmother, Ms. Hyde jumped from the fifth floor of her grandmother's apartment building in a suicide attempt.  Following this incident, she was again hospitalized and was ultimately involuntarily committed to SODC pursuant to a civil commitment order.  She has resided in SODC since age 18, and she is now 24 years old.  The record demonstrates that she has made substantial progress and is stabilized, but she is not capable of independently carrying out the activities of daily life.

{¶5}   In 2018, APSI, a private, nonprofit entity dedicated to protecting the rights of adults in Ohio with developmental disabilities, filed an application for guardianship of Ms. Hyde.  Ms. Payne filed a competing application.  Because the probate court did "not believe [Ms. Payne] will be able to make all requisite decisions necessary to properly provide for Ariana's needs given her reluctance to fully accept

her daughter's mental health diagnosis[,]" in February 2019, it appointed APSI as the legal guardian of Ms. Hyde.

{¶6} Ms. Payne and Ms. Hyde reunite at weekly visits where Ms. Payne takes her daughter from the SODC's facility for about eight hours at a time. By all accounts, everything seems to proceed well during these visits. As a result, Ms. Payne has requested overnight visits, but so far, APSI has denied her requests. Ms. Payne provides Ms. Hyde with personal hygiene products and clothing. It is undisputed that she has capably advocated for her daughter's needs, including her quality of care at SODC and her transition to a less restrictive environment.

{¶7} In August 2022, Ms. Payne moved to remove APSI from the position of guardian of Ms. Hyde and to appoint herself as guardian. In January 2023, the probate court convened a hearing on the motions. Ms. Payne called four witnesses: Dr. Stuart Bassman (the chief psychologist at SODC), Jill Esz (a supervisor at SODC), Kristina Gaible (a regional director at APSI), and she testified as well. The APSI employee directly assigned to Ms. Hyde (Mr. Potter) could not attend the hearing because of his paternity leave.

{¶8} Dr. Bassman testified regarding his role as chief psychologist, Ms. Hyde's significant progress while at SODC, SODC's plans to move her to a less restrictive facility "within weeks," his communications with Ms. Payne and Mr. Potter, Ms. Hyde's lack of any unmet needs, and his lack of concern with APSI's performance as guardian.

{¶9} Ms. Esz shared her role as a liaison between the agency, families, courts, and other entities, her understanding regarding Ms. Hyde's stability with her medication, her relationship with Ms. Payne and her observations that Ms. Payne has

her daughter's best interests at heart and has served as a good advocate, the attempts to move Ms. Hyde to a less restrictive facility, Ms. Hyde's desire to have an apartment (which she will have at the new facility), APSI's support in moving her to a less restrictive setting, and her observations that APSI has acted in her best interests and has met its responsibilities as guardian.

{¶10}  Ms. Gaible communicated APSI's role as court appointed guardian, her role overseeing Ms. Hyde's direct assigned representative (Mr. Potter), Mr. Potter's visits with Ms. Hyde, Mr. Potter's training, Ms. Hyde's dislike for her current placement at SODC, the team's challenges in finding a less restrictive placement suitable for her, and her current involuntary commitment at SODC.

{¶11}  And finally, Ms. Payne testified to Mr. Potter's lack of attendance at the annual mental health hearings, her visits with her daughter, what she provides, her concerns with Ms. Hyde's care and quality of life at the SODC facility, her communication with Mr. Potter and Ms. Esz, the denial of an overnight visit pass, and her perception that APSI sought to block the move into a less restrictive setting.  She also shared that she feels that she acts in her daughter's best interests while Mr. Potter does not.

{¶12}  APSI called one witness: Amanda Lee (a residential care supervisor at SODC).  Ms. Lee discussed her regular interaction with Ms. Hyde over the past two and a half years, her observation that her needs are being met, APSI's ability to meet her needs, her need for 24-hour care, and her failure to express any desire to stay overnight with her mother.

{¶13}  The magistrate issued his decision denying the motion to remove APSI as guardian (and therefore, he also denied Ms. Payne's motion to be appointed

guardian). In response, Ms. Payne filed objections arguing that APSI breached its duty of care to Ms. Hyde, that the court should apply the "best interest" standard to terminate APSI's guardianship, and that she has a constitutional right to the maintenance of the parent-child relationship. In October 2023, the probate court denied her objections and adopted the decision of the magistrate. Ms. Payne now appeals.

## II.

{¶14} The decisions of probate courts regarding guardianship matters are not reversed on appeal absent an abuse of discretion. *See In re Guardianship of Keane*, 7th Dist. Carroll No. 19 CA 0934, 2020-Ohio-1105, ¶ 65, citing *In re Estate of Bednarczuk*, 80 Ohio App.3d 548, 551, 609 N.E.2d 1310 (12th Dist.1992). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. And "[w]hen reviewing the trial court's [factual] findings, this court must be guided by the presumption that the trial court's findings were correct." *In re Guardianship of Rahbek*, 3d Dist. Shelby No. 17-19-11, 2020-Ohio-3223, ¶ 22, citing *In re Guardianship of Slone*, 3d Dist. Crawford No. 3-04-13, 2004-Ohio-6041, ¶ 3.

{¶15} In her first assignment of error, Ms. Payne contends that the magistrate did not make a best interests finding and that the record supports a determination that it is in the best interests of Ms. Hyde to appoint her mother as her guardian. Before analyzing this assignment of error, we must sketch the statutory background. R.C. Chapter 2111 governs guardians and conservatorships, but it fails to address the process of removal of the guardian of an incompetent ward. R.C. Chapter 2109, on the

other hand, governs fiduciaries appointed by the probate court with respect to financial matters. It contains a provision that specifically enumerates the permissible reasons to remove a fiduciary: "habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." R.C. 2109.24.

{¶16} Because R.C. Chapter 2111 does not contain a removal standard for guardians of incompetent wards, Ohio courts have generally borrowed the removal standard of R.C. 2109.24 to apply to the removal of such guardians. *See, e.g.*, *In re Spangler*, 11th Dist. Geauga Nos. 2007-G-2800 and 2007-G-2802, 2011-Ohio-6686, ¶ 25. Based on the arguments presented by the parties, we have no reason to question this conclusion. Moreover, probate courts serve as the "superior guardian" of any ward. R.C. 2111.50(A)(1). And their "ultimate concern is the welfare of the ward." *In re Spangler* at ¶ 54. Therefore, courts have interpreted the best interests of the ward as a basis for the removal of a guardian that is authorized by the catchall provision of R.C. 2109.24. *Id.* at ¶ 32.

{¶17} Here, Ms. Payne maintains that the magistrate erred by not using the best interests standard in evaluating the removal of the guardian. But "in an appeal from a ruling on objections to a magistrate's decision, an appellate court reviews the trial court's judgment, not the magistrate's decision." *Frey v. Amazon Home Warranty LLC*, 10th Dist. Franklin No. 23AP-114, 2023-Ohio-3899, ¶ 8, citing *Vice v. Sexton*, 4th Dist. Scioto No. 10CA3371, 2011-Ohio-1647, ¶ 24.

{¶18} Turning to the probate court's decision, while it adopted the magistrate's factual findings and legal conclusions, based on the evidence presented

7

at the hearing, it also separately concluded "that none of the criteria for removal of a guardian set forth in R.C. 2109.24 had been met and the Court cannot find that it is in the ward's best interests to remove the guardian." While it would facilitate our review if the probate court explained its reasoning for its best interests finding, nonetheless, the court established that it considered Ms. Hyde's best interests in its decision to maintain APSI as her guardian.

{¶19} And further, the record supports this best interests conclusion. Because of Ms. Hyde's significant mental health needs and cognitive delays, she is not capable of independently carrying out the activities of daily life and requires 24-hour care. Nevertheless, Ms. Payne questioned the delay in moving her daughter to a less restrictive setting. But the record explains the basis for the delay. Her daughter's care team determined that a less restrictive setting with apartment-style living, 24-hour staffing, and remote monitoring would be most appropriate for her needs and further her development. Members of her care team emphasized the importance of finding the right placement to ensure that she did not experience any developmental setbacks following her transition. Testimony at the hearing established that locating this type of placement proved extremely challenging, and after much effort, her care team finally found an appropriate placement.

{¶20} The magistrate determined (and the court adopted the finding) "that APSI has done a good job of making decisions regarding the care of Ariana Hyde, sometimes under difficult circumstances" and that "APSI and SODC have a good plan to transition Ariana to a less restrictive environment which will be in line with her future needs." The testimony presented at the hearing demonstrated that APSI has been involved and has been actively working toward the goal of identifying a less

8

restrictive placement that will meet her complex needs. Additionally, while certain testimony established that Ms. Payne is a good advocate for her daughter, we see no indication that APSI took any measures to interfere with her advocacy. Therefore, the trial court did not abuse its discretion when it denied Ms. Payne's motion to remove APSI as guardian.

{¶21} Thus, we overrule her first assignment of error.

III.

{¶22} Turning to Ms. Payne's second assignment of error, she challenges the court's determination that the guardian satisfied industry standard guidelines, alleging that the guardian failed to exercise due diligence and make decisions for her daughter in pursuit of her least restrictive alternative.

{¶23} As an initial matter, it is important to note that APSI serves as the guardian in this case. Ms. Payne's brief references actions of APSI's assigned representative—Mr. Potter—and argues that "he" failed to meet industry standards. But ultimately, APSI, not Mr. Potter, was appointed as Ms. Hyde's guardian. Therefore, we evaluate Ms. Payne's arguments with respect to APSI's role as guardian.

{¶24} Ms. Payne seemingly equates "industry standard guidelines" to the provision on guardianship found in the Ohio Rules of Superintendence for the Courts. *See* Sup.R. 66. But these rules "are administrative directives only and do not function as, or have the force of, law in the same manner as rules of practice and procedure." *In re Guardianship of Bernie*, 12th Dist. Butler No. CA2018-01-005, 2019-Ohio-334, ¶ 27, citing *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801. Consequently, they "do not provide a ground for reversal." *Id*. at ¶ 28.

{¶25} And regardless, the record does not support Ms. Payne's arguments that APSI violated these rules. Ms. Payne asserts that APSI failed to meet the following responsibilities of a guardian to their ward:

(B) Exercising due diligence

A guardian shall exercise due diligence in making decisions that are in the best interest of a ward, including but not limited to communicating with the ward and being fully informed about the implications of the decisions.

(C) Least restrictive alternative

Unless otherwise approved by the probate division of a court of common pleas, a guardian shall make a choice or decision for a ward that best meets the needs of the ward while imposing the least limitations on the ward's rights, freedom, or ability to control the ward's environment. To determine the least restrictive alternative, a guardian may seek and consider an independent assessment of the ward's functional ability, health status, and care needs.

Sup.R. 66.09(B) and (C).

{¶26} We first consider APSI's performance with respect to Sup.R. 66.09(B). All three SODC employees who Ms. Payne called as witnesses expressed that they did not have any concerns with APSI's performance as guardian. And further, Ms. Esz indicated that APSI supported moving Ms. Hyde to a less restrictive setting and that she had observed APSI acting in her best interests. And the 2021 guardian's report discussed at the hearing demonstrated that Mr. Potter had five visits with Ms. Hyde during that year. Ms. Gaible (an APSI supervisor) clarified that these visits do not

encompass all of the interactions between Ms. Hyde and Mr. Potter but rather are limited to visits that meet specific criteria: the visits must be face-to-face and discuss her wants, needs, placement, services, and any necessary changes.

{¶27} Turning to Sup.R. 66.09(C), the record provides ample evidence demonstrating APSI's efforts (along with the rest of Ms. Hyde's support team) to transition her to a less restrictive placement. Ms. Hyde was placed in SODC on a court-ordered, involuntary basis. While the process to transition her placement took substantial time, and Ms. Hyde expressed her dissatisfaction with her placement at SODC, her care team made significant efforts to secure her an appropriate placement that could sufficiently meet her complex needs. They wanted to be certain that her placement would be stable and sustainable to ensure she would not have to return to SODC and have her progress disrupted. The process also required a placement provider to accept Ms. Hyde as a client (which was out of the control of APSI). And ultimately, shortly after the hearing, in April 2023, Ms. Hyde was transitioned from SODC to a less restrictive, apartment-style placement that her care team felt could provide her with sufficient support.

{¶28} In light of the record and the applicable law, we overrule Ms. Payne's second assignment of error.

\* \* \*

{¶29} Considering the foregoing analysis, we overrule both of Ms. Payne's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, P.J.,** and **CROUSE, J.,** concur.

11

Please note:

The court has recorded its entry on the date of the release of this opinion.