**[Cite as *In re Guardianship of Cottrell*, 2025-Ohio-4917.]**

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN RE: GUARDIANSHIP OF DELMOR COTTRELL, <br><br> (Jeffrey Cottrell, Appellant). | Case No. 25CA0000002 <br><br> <u>Opinion and Judgment Entry</u> <br><br> Appeal from the Knox County Court of Common Pleas, Probate Division, Case No. 2025 2001 <br><br> Judgment: Affirmed <br><br> Date of Judgment Entry: October 27, 2025 |

**BEFORE:** ANDREW J. KING, P.J.; KEVIN W. POPHAM, J.; DAVID M. GORMLEY, J., Appellate Judges

**APPEARANCES:** John T. Ryerson, Jr., for Appellant; Porter R. Welch, for Appellee.

OPINION

*Popham, J.*

{¶1} Appellant Jeffrey Cottrell appeals the judgment of the Knox County Court of Common Pleas, Probate Division.

*Facts & Procedural History*

{¶2} Tracey Epley ("Epley") and Karen Ferguson ("Ferguson"), daughters of Delmor Duane Cottrell ("Delmor"), filed an application to be appointed co-guardians for Delmor. Attached to their application was a "Statement of Expert Evaluation" completed by a licensed physician, who opined that Delmor was mentally impaired due to senile

dementia. Appellant, Jeffrey Cottrell, Delmor's son, filed a competing application for guardianship. The trial court appointed Porter Welch ("Welch") as counsel for Delmor.

{¶3} On January 31, 2025, the trial court conducted a hearing on the applications for guardianship. At the conclusion of the hearing, the trial court appointed Epley and Ferguson as co-guardians of both the person and estate of Delmor.

{¶4} On February 28, 2025, the trial court conducted a status conference during which appellant argued that Delmor had been misdiagnosed with dementia and that his condition was improving. In a judgment entry dated February 28, 2025, the trial court ordered Epley and Ferguson to obtain a second medical evaluation of Delmor by a licensed physician. On March 7, 2025, Epley and Ferguson filed a new "Statement of Expert Evaluation," in which the physician opined that Delmor is mentally impaired due to vascular dementia.

{¶5} On March 12, 2025, Welch filed a motion to restrict contact, requesting that the trial court limit or prohibit appellant's contact with Delmor. On March 17, 2025, appellant filed a memorandum in opposition to Welch's motion. On April 1, 2025, the trial court held a hearing on Welch's motion during which the court heard testimony from Ferguson, Epley, appellant, and a nurse employed at the nursing home where Delmor resides.

{¶6} Ferguson, a nurse, testified that she visits Delmor at the nursing home two or three times per week. She stated that after appellant's visits with his father, Delmor becomes agitated and repeatedly calls her. Ferguson described how appellant lines up, in Delmor's room, water bottles with dollar amounts on them and asks Delmor to perform tasks involving the bottles. Ferguson testified about Exhibit A, a letter purportedly written

by Delmor regarding litigation with the United States Department of Agriculture ("USDA"), but she does not believe Delmor could have written or typed the letter because he does not have access to a computer and does not understand the status of any litigation. Ferguson believes it is in Delmor's best interest for the court to restrict appellant's visits with Delmor.

{¶7} Peggy Wolford ("Wolford"), a nurse at the nursing home where Delmor resides, testified that when appellant impermissibly attempted to take Delmor out of the building Delmor became slightly upset. Wolford also testified Delmor appeared "very confused."

{¶8} Epley, who is also a nurse, likewise testified that Delmor becomes very agitated after appellant's visits. Epley is concerned that appellant has Delmor practice writing the names of family members. According to Epley, Delmor told her that he must write and mail letters to appellant so appellant can check to "see if Delmor is getting better." Epley believes these activities have a negative impact on Delmor.

{¶9} Appellant testified that he brought coins to the nursing home and asked Delmor to count them because he wanted to determine whether Delmor could count money, order a pizza, and pay for food. He also had Delmor write the names of his family members on a piece of paper. Appellant brought water bottles to Delmor's room at the nursing home. Appellant explained that he wanted to know whether Delmor could, if taken grocery shopping, go to the next aisle and choose the cheaper water. However, Delmor was unable to do so. Appellant stated he does not believe these activities are harmful; rather, he believes they make Delmor feel empowered.

**{¶10}** Appellant further testified that Delmor told him he could read and understand documents, so appellant brought him court papers because Delmor requested them. Appellant also provided Delmor with an article about the seven stages of dementia. Appellant believes this information about the guardianship case and dementia is beneficial for Delmor to learn and understand.

**{¶11}** Appellant testified that he has filed numerous lawsuits against the USDA. He stated that, many years ago, Delmor told appellant he would help obtain documents from the USDA. Appellant spoke to Delmor in January of 2025 and then drafted the letter purportedly signed by Delmor. At that point in his testimony, appellant invoked his Fifth Amendment right against self-incrimination. Appellant stated that, at the time of the hearing, he was not involving Delmor in any lawsuits with the USDA.

**{¶12}** On April 9, 2025, the trial court issued a judgment entry, in which the court set forth, and found, the following restrictions to be in the best interest of Delmor: appellant shall not bring any items to visits with Delmor unless approved in advance by Epley and Ferguson; appellant shall not provide Delmor with court filings or discuss the guardianship case with Delmor, except to advise Delmor to speak with his attorney (Welch); appellant shall not direct Delmor to engage in writing, spelling, counting, or similar activities, unless specifically directed by Epley and Ferguson in accordance with medical recommendations; appellant shall not make complaints regarding the nursing facility or Delmor's care to any institution or agency, but shall instead direct such concerns to Epley, Ferguson, and Welch; appellant shall not discuss his ongoing dispute with the USDA or any governmental body with Delmor; and appellant shall not sign or direct Delmor to sign any document or correspondence purporting to be written by Delmor. The

trial court stated that, "any failure to abide by these orders shall result in a finding of contempt against [appellant], punishable by jail time and/or fines."

**{¶13}** Appellant appeals the judgment of the Knox County Court of Common Pleas, Probate Division, and assigns the following as error:

**{¶14}** "I. THE DECISION OF THE TRIAL COURT WAS NOT SUPPORTED BY EXPERT AND/OR UNBIASED TESTIMONY."

**{¶15}** "II. RULE OF SUPERINTENDENCE 66.09 DIRECTS THE GUARDIANS TO FOSTER AND PRESERVE POSITIVE RELATIONSHIPS, SUCH AS DELMOR DUANE COTTRELL HAS WITH JEFFREY COTTRELL."

*Standard of Review*

**{¶16}** Generally, a probate court's decision regarding guardianship matters will not be reversed by this Court on appeal absent an abuse of discretion. *In the Matter of Guardianship of Pond*, 2022-Ohio-4023, ¶ 59 (5th Dist.). An abuse of discretion occurs when the trial court's ruling is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶17}** In his first assignment of error, appellant argues that the trial court's decision restricting visitation was against the manifest weight of the evidence. "As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses." *In re Guardianship of Alexander*, 2015-Ohio-1908, ¶ 12 (5th Dist.). Rather, "our role is to determine whether there was relevant, competent, and credible evidence upon which the factfinder could base his judgment." *Cross Truck Equip., Co. v. The Joseph A. Jeffries, Co.*, 1982 Ohio App. LEXIS 15233, * 1 (5th Dist. Feb. 10, 1982). Accordingly, judgments supported by some competent and credible evidence going to all the essential elements

of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 279 (1978).

I.

**{¶18}** In his first assignment of error, appellant contends the trial court's determination was against the manifest weight of the evidence because: (1) no expert or "unbiased" testimony supported Welch's claim that appellant's visits with Delmor were not in Delmor's best interest, and (2) the trial court failed to properly consider appellant's own testimony.

**{¶19}** "The probate court maintains the authority to address matters of visitation in relation to guardianships." *In the Guardianship of B.I.C.*, 2009-Ohio-4800, ¶ 16 (9th Dist.). As to appellant's first argument, there is no requirement in a manifest-weight review that testimony be "unbiased." Rather, it is within the factfinder's province - here, the probate court - to weigh the evidence and judge the credibility of the witnesses. *Alexander*, 2015-Ohio-1908 at ¶ 12. Further, the trial court "is free to believe, all, part, or none of the testimony of any witness appearing before it." *Rogers v. Hill*, 124 Ohio App.3d 468, 470 (4th Dist. 1998); *In re Estate of* Gordon, 2014-Ohio-2133, ¶ 26 (5th Dist.).

**{¶20}** We find there is competent and credible evidence to support the trial court's decision. Appellant admitted asking Delmor to perform activities such as counting coins, ordering food, paying for food, and writing family members' names. Appellant also stated that he brought guardianship documents and dementia-related materials to Delmor. Epley testified these activities negatively impacted Delmor. Ferguson testified Delmor does not understand the documents and articles that appellant gives to him. Ferguson also testified that, after appellant visits with Delmor, Delmor is

agitated and calls her repeatedly. She thus believes it is in the best interest of Delmor that appellant's visitation be restricted. Based on this testimony, the trial court did not abuse its discretion by finding that visitation restrictions were in Delmor's best interest.

**{¶21}** Expert testimony is necessary whenever a factual issue is beyond the ordinary, common, and general knowledge and experience of a layperson. *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 103 (1992). We note that both Epley and Ferguson are nurses. However, the matters they testified to, such as Delmor's lack of understanding of documents provided to him by appellant, Delmor's agitation after appellant's visits, and Delmor's repeated calls to Ferguson after appellant's visits with Delmor, are not issues beyond the ordinary, common, and general knowledge and experience of a layperson.

**{¶22}** As to appellant's claim that the trial court disregarded his testimony, the record reflects that the trial court considered it, but found appellant's assertions that his actions were "helping" Delmor lacked credibility in light of contrary testimony. We defer to the trial court on the issues of credibility because the trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶23}** Appellant's first assignment of error is overruled.

II.

**{¶24}** In his second assignment of error, appellant argues that the trial court failed to comply with Sup.R. 66.09(D) ("a guardian shall advocate for services focused on a ward's wishes and needs to reach the ward's full potential") and Sup.R. 66.09(E) ("a

guardian shall strive to foster and preserve positive relationships in the ward's life unless such relationships are substantially harmful to the ward") when it restricted his contact with Delmor.

{¶25} We first note that Sup.R. 66.09 provides "responsibilities" the guardian has to the ward. The text of the rule does not provide any instruction or impose any restrictions on a probate court when deciding visitation issues. Additionally, courts, including this Court, have routinely held that, "[a]lleged violations of the Rules of Superintendence are not a basis for reversal." *PTJWE Consulting, LLC v. Sun Color Corp.*, 2023-Ohio-4193, ¶ 14 (5th Dist.), quoting *Myers v. Wade*, 2017-Ohio-8833, ¶ 22 (10th Dist.); *In the Matter of the Guardianship of Bernie*, 2019-Ohio-334, ¶ 27 (12th Dist.) (Superintendence Rules are administrative directives only and do not provide grounds for reversal); *In re Guardianship of Hyde*, 2024-Ohio-1878, ¶ 24 (1st Dist.) (Rules of Superintendence do not provide grounds for reversal).

{¶26} Even so, the record does not support appellant's claim of noncompliance. The probate court is the "superior guardian" of the ward. *Guardianship of Basista*, 2015-Ohio-3730, ¶ 13 (11th Dist.). As such, the probate court is the "ultimate arbiter of whether it is in the best interest of a ward for an individual to have visitation." *Id.* While appellant believes that providing Delmor with tasks and documents is helpful, there was contrary testimony that these tasks and documents upset Delmor and caused him to be more confused. As detailed above, we find competent and credible evidence supports the trial court's conclusion that visitation restrictions serve Delmor's best interest.

{¶27} Appellant's second assignment of error is overruled.

{¶28} For the reasons stated in our accompanying Opinion, the judgment of the Knox County Court of Common Pleas, Probate Division, is affirmed.  Costs to appellant.


By: Popham, J.

King, P.J. and

Gormley, J. concur